940 F.2d 499
 68 A.F.T.R.2d 91-5330, 91-2 USTC P 50,478
 Ralph J. MAISANO, III; Audrey D. Maisano, Plaintiffs-Appellants,
v.
Robert L. WELCHER; C. Jameson; Ms. Harrison, Individually
and as agents of the IRS; Department of the Treasury;
Internal Revenue Service; United States of America; Reno
Tow Service; John Does I-X; Jane Does I-X, Defendants-Appellees.
 No. 89-16004.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 3, 1991.*
Decided July 30, 1991.
 
 Ralph J. and Audrey D. Maisano, in pro. per.
 Gary R. Allen, Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the District of Nevada.
 Before KILKENNY, SNEED and FERGUSON, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 Plaintiffs Ralph J. and Audrey D. Maisano appeal pro se the district court's grant of summary judgment in favor of defendants in an action for return of property seized by the Internal Revenue Service (IRS) to satisfy the Maisanos' outstanding tax liabilities. We affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 This action arises out of the Maisanos' failure to pay tax deficiencies assessed against them for the tax years 1982, 1983, and 1984. The Maisanos' liability for these deficiencies was upheld by this court in appeals from two previous actions. See Maisano v. United States, 908 F.2d 408 (9th Cir.1990) and Maisano v. Commissioner, 894 F.2d 1344 (9th Cir.1990).
 
 
 3
 On June 8, 1988, defendant IRS agents, along with defendant Reno Tow, went to the Maisanos' property in Reno, Nevada to seize a 1984 Chevrolet Blazer in order to satisfy these deficiencies. The Maisanos claim that the Blazer belonged to the F.Y.S.-V Family Preservation Trust (the "Trust"), of which the Maisanos are trustees. Thus, according to the Maisanos, the IRS seized property belonging to the wrong party. When the agents arrived, Audrey Maisano asked to see a court order. The agents produced a levy and notice of seizure. Because the documents were not court orders, Ms. Maisano informed the agents that they were trespassing and asked them to leave. Despite her protests, the defendants towed the vehicle from the Maisanos' driveway.[1]
 
 
 4
 On September 16, 1988, the Maisanos filed a "Complaint For Trespass Action at Law" in the federal district court for the District of Nevada, alleging that the seizure violated their Fourth, Fifth, and Seventh Amendment rights. Defendants filed a motion to dismiss under Fed.R.Civ.P. 12(b)(1), (2) and (6), or in the alternative for summary judgment. In support of their motion for summary judgment, defendants argued that the Maisanos had shown no facts suggesting that a constitutional violation had occurred or that the defendants had acted in other than their official capacity.
 
 
 5
 On July 13, 1989, the district court entered summary judgment in favor of defendants. The court held that the defendants did not trespass on the Maisanos' property; that defendants' warrantless seizure of the Blazer did not violate the Maisanos' constitutional rights; and that the Maisanos did not have authority to appear pro se on behalf of the family trust. The Maisanos appeal.
 
 II.
 JURISDICTION AND STANDARD OF REVIEW
 
 6
 This court has jurisdiction over the appeal pursuant to 28 U.S.C. Sec. 1291 (1988). We review de novo the district court's grant of summary judgment. See, e.g., Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).
 
 III.
 DISCUSSION
 
 7
 Section 6331(a) of the Internal Revenue Code of 1986 authorizes the Secretary of the Treasury (or a delegate) to collect taxes "by levy upon all property and rights to property" belonging to a person who neglects or refuses to pay any tax liability within ten days after notice and demand. 26 U.S.C. Sec. 6331(a) (1988). Section 6331(b) defines "levy" as including "the power of distraint and seizure by any means". Id. Sec. 6331(b). Both real estate and personal property, tangible and intangible, are subject to levy under section 6331(a). See G.M. Leasing Corp. v. United States, 429 U.S. 338, 350, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977).
 
 
 8
 A. Did the Maisanos, as Trustees of the F.Y.S.-V Family Trust, Have Standing to Maintain This Action?
 
 
 9
 Because the Maisanos had alleged that the Blazer belonged to their family trust, the district court held that, as pro se litigants, they did not have standing to represent the trust.[2]
 
 
 10
 The district court's holding was based on C.E. Pope Equity Trust v. United States, 818 F.2d 696 (9th Cir.1987), where this court held that a pro se litigant, who had filed the action as a trustee on behalf of the trust, "ha(d) no authority to appear as an attorney for others than himself." Id. at 697. The court went on, however, to consider whether the litigant was the actual beneficial owner of the trust's claims. Id. Because the record did not contain any evidence to that effect, the litigant was barred from representing the trust. Id. at 697-98.
 
 
 11
 The record in the Maisanos' case contains considerable evidence indicating not only that the Maisanos were the beneficiaries of the Trust, but also that they were the actual owners of the seized vehicle. For example, testimony and exhibits presented at a hearing on the Maisanos' motion for a temporary restraining order showed that Mr. Maisano paid cash for the vehicle and kept its maintenance records in his own name.
 
 
 12
 The Maisanos have placed themselves in a no-win situation on this issue. If the Blazer belongs to the trust, the Maisanos have no standing to sue and their case must be dismissed. If the Blazer actually belongs to the Maisanos, they lose their argument that the IRS seized property belonging to the wrong party. Thus, if none of the plaintiffs' arguments on the merits can prevail,[3] we need not resolve the question of whether the trust or the Maisanos actually owned the vehicle. The plaintiffs lose, provided the agents committed no cognizable wrong. To this we now turn. In doing so we shall assume, without deciding, that the Blazer belonged to the Maisanos.
 
 
 13
 B. Did the Defendants' Seizure of the Vehicle Violate Plaintiffs' Fifth and Seventh Amendment Rights?
 
 
 14
 The Maisanos contend that the seizure of their property violated their Fifth Amendment right to due process, and their Seventh Amendment right to a jury trial. They argue that the assessment of tax liability was improper without a hearing and judgment by an Article III court. They also contend that a tax lien must remain secret until a judgment is obtained or until the conditions set forth in 31 U.S.C. Sec. 3713 (relating to priority of claims upon taxpayer insolvency) are met, and that the filing of a tax lien on their property was therefore an unauthorized disclosure of taxpayer information.
 
 
 15
 The Maisanos' first contention, that the assessment of their tax liability was invalid without a hearing and judgment from an Article III court, is wrong. This court has held that the IRS is authorized to collect taxes by either levy or court proceeding. Maisano, 908 F.2d at 409 (citing 26 U.S.C. Sec. 6502(a); Todd v. United States, 849 F.2d 365, 369 (9th Cir.1988); Stonecipher v. Bray, 653 F.2d 398, 403 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982)).
 
 
 16
 The Maisanos next assert that the tax lien must remain secret until reduced to judgment or until the conditions set forth in 31 U.S.C. Sec. 3713 are satisfied. Again they are wrong. This court also has previously rejected this position on the grounds that statutory and regulatory provisions authorize disclosure of return information by the IRS in connection with its collection activities. Stonecipher, 653 F.2d at 410 (citing 26 U.S.C. Sec. 6103(k)(6); Treas.Reg. Sec. 301.6103(k)(6)-1(b)(6)).
 
 
 17
 C. Did the Seizure of Property by the IRS Violate the Fourth Amendment?
 
 
 18
 In addition to their Fifth and Seventh Amendment claims, the Maisanos assert a variety of statutory claims leading to the assertion that the provisions of the Internal Revenue Code create a Fourth Amendment right to a hearing by an Article III court prior to assessment.
 
 
 19
 The Maisanos' first claim rests on an attempt to limit the scope of section 6331 by narrowly defining "assets subject to levy" to include only certain "narrow exceptions" (i.e. wages of government employees) mentioned in the provisions of section 6331 itself. However, their reading ignores the first sentence of section 6331(a), which gives the statute its broad scope and clearly states that it applies to all property of any person liable to the IRS. See 26 U.S.C. Sec. 6331(a). In G.M. Leasing, the Supreme Court noted that the IRS can levy upon all property and rights to property belonging to a taxpayer, and that both real and personal property, tangible and intangible, are subject to levy. G.M. Leasing, 429 U.S. at 349-50, 97 S.Ct. at 627; see also 26 U.S.C. Sec. 6331(a). The exceptions noted by plaintiffs merely clarify procedures followed in special situations (i.e. attachment of government employees' wages) and do not limit the statute's scope. See 26 U.S.C. Sec. 6331(a).
 
 
 20
 The Maisanos then argue that court proceedings are required under sections 6322 and 6502. This interpretation again ignores the plain language of the applicable statutes. Section 6502 gives the IRS the option to collect its assessments by either a levy or a court proceeding, and this court has held that taxpayers do not have the right to a hearing prior to collection efforts by the IRS. See Maisano, 908 F.2d at 409. Section 6322 merely specifies the length of time that either a lien or a judgment shall remain valid. See 26 U.S.C. Sec. 6322.
 
 
 21
 Finally, the Maisanos contend that the IRS could not seize the Blazer because it was not subject to forfeiture pursuant to 26 U.S.C. Sec. 7321. The Maisanos are confusing "property subject to levy" with "property subject to forfeiture." The "levy" provision, section 6331, is contained in Chapter 64 of the Internal Revenue Code and deals with the IRS's broad powers to seize assets in order to collect balances due it from taxpayers. The "forfeiture" provision, section 7321, is contained in Chapter 75, which deals with the relatively narrow powers of the IRS to seize assets involved in attempts to defraud the IRS or to violate internal revenue laws, and to seize counterfeit stamps and other false instruments. See id. Secs. 7301-7304. Moreover, section 6331 does not require that property be subject to forfeiture under section 7321. See id. Secs. 6331, 7321. The two chapters apply to entirely different situations, and section 7321 is clearly inapplicable to this case.
 
 
 22
 For this reason defendants did not violate the Maisanos' Fourth Amendment freedom from unreasonable searches and seizures by seizing property not subject to forfeiture. There is no requirement that property seized by the IRS first be subject to forfeiture under section 7321.
 
 
 23
 D. Did the Defendants' Warrantless Seizure of the Blazer From the Maisanos' Driveway Violate the Maisanos' Fourth Amendment Rights?
 
 
 24
 The Maisanos also argue that the defendants violated their Fourth Amendment rights by entering their property and seizing their vehicle without a warrant or a writ of entry.[4] They are wrong. In applying the Fourth Amendment to IRS seizures of taxpayers' property, the Supreme Court indicates that the key issue is whether the seizure involves an invasion of privacy. G.M. Leasing, 429 U.S. at 351-52, 97 S.Ct. at 628. Thus, the Court has upheld warrantless seizures of automobiles belonging to taxpayers from streets, parking lots, and other open places because the IRS did not invade the taxpayers' privacy. Id.
 
 
 25
 In order to establish an invasion of privacy, the plaintiff must have exhibited an actual, subjective expectation of privacy in the area entered. Smith v. Maryland, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). In addition, this expectation must be one that society is prepared to accept as reasonable and therefore legitimate. Id. While Ms. Maisano's protests against the agents' actions suggest that the Maisanos had an actual, subjective expectation of privacy in their driveway, the issue remains whether that expectation was objectively reasonable and legitimate.
 
 
 26
 This court has held that "[a] driveway is only a semiprivate area. The expectation of privacy which a possessor of land may reasonably have while carrying on activities on his driveway will generally depend upon the nature of the activities and the degree of visibility from the street." United States v. Magana, 512 F.2d 1169, 1171 (9th Cir.), cert. denied, 423 U.S. 826, 96 S.Ct. 42, 46 L.Ed.2d 43 (1975); see also United States v. Humphries, 636 F.2d 1172, 1179 (9th Cir.1980) (upholding entry onto driveway to identify license plate where automobile was visible from street), cert. denied, 451 U.S. 988, 101 S.Ct. 2324, 68 L.Ed.2d 846 (1981). These holdings are consistent with the Supreme Court's general rule that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967); see also United States v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976) (no warrant required to arrest subject in doorway of home when doorway was visible from street). In order to establish a reasonable expectation of privacy in their driveway, the plaintiffs must support that expectation by detailing the special features of the driveway itself (i.e. enclosures, barriers, lack of visibility from the street) or the nature of activities performed upon it.
 
 
 27
 The Maisanos have offered no evidence to support the reasonableness of their expectation of privacy in their driveway. There is no evidence that the driveway was obstructed or enclosed in any way, or that the vehicles seized were not visible from the street. There is also no evidence that the Maisanos were carrying on activities requiring Fourth Amendment protection on their driveway. Thus, there is no legitimate expectation of privacy to support the Maisanos' conclusory assertions that their driveway was "within the curtilage" of their home, and the defendants' entry upon the driveway to seize the Blazer did not violate the Maisanos' Fourth Amendment rights.
 
 
 28
 E. Sovereign and Qualified Immunity.
 
 
 29
 In light of our holding that the plaintiffs have failed to establish any violation of constitutional or statutory rights, we need not reach the government's claims of sovereign and qualified immunity.
 
 
 30
 The district court's grant of summary judgment is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 The IRS also seized a 1986 Mazda 626. Seizure of the Mazda is not at issue in this appeal
 
 
 [2]
 It is not clear from the Maisanos' brief whether they contest the district court's ruling on the standing issue. However, since they are pro se litigants, we read their brief liberally and include this issue in our review of the district court's ruling
 
 
 [3]
 See our discussions below
 
 
 [4]
 In their statement of issues presented for review, the Maisanos also purport to challenge this seizure as a violation of rights under the Nevada Constitution as well. However, they offer no legal analysis or discussion at all. We treat this unargued claim as abandoned. See Movie 1 & 2 v. United Artists Communications, 909 F.2d 1245, 1253-54 (9th Cir.1990)