993 F.2d 1549
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Deborah S. CESZYK, Plaintiff-Appellant,
v.
Francis J. CUNEO, Jr., Louise Macgaffey, Richard P. Doria,
et al. Defendants-Appellees.
 No. 91-3898.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 29, 1993.[1]
Decided June 1, 1993.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Deborah S. Ceszyk filed this pro se appeal from a district court order dismissing an action against certain defendants, and entering summary judgment in favor of other defendants in this civil rights action brought under 42 U.S.C. §§ 1983 and 1985.[2]
 
 Background
 
 2
 The record reveals the following facts. In 1981, plaintiff moved into a home in Warrenville, Illinois.[3] In 1982, Arnold Zoglauer was divorced from his wife Louise Zoglauer MacGaffey in the circuit court of DuPage County, Illinois. In February 1984, the circuit court adjudged Arnold in arrears in child support payments. Three days later, Arnold conveyed the Warrenville, Illinois home to plaintiff in a quitclaim deed, for the price of ten dollars.
 
 
 3
 In 1985, Louise (represented by her attorney, defendant Cuneo) sought to have the conveyance set aside as fraudulent and asked that the property be sold and used to pay Arnold's child support arrearage, maintenance, attorney and legal fees, and future noncompliance of child support.
 
 
 4
 Sheriff's Deputy Roger Rinck, at the direction of Sheriff Doria, personally served plaintiff. The affidavit of service showed that he had served her with a summons and complaint, when he had actually served her with a notice of motion, and apparently the petition to set aside the conveyance. On February 19, 1985, the trial court determined that service on plaintiff was not proper because she had never been joined in the divorce action as a third-party defendant. However, the trial court granted Cuneo leave to join plaintiff as an additional party. Cuneo, however, merely added plaintiff's name to the amended petition's caption.
 
 
 5
 In April 1985, the trial court dismissed the petition alleging fraudulent conveyance because plaintiff was not properly joined as an additional party. In June 1985, the trial court vacated that dismissal. Arnold successfully appealed. The Illinois Appellate Court reversed the June 1985 order vacating the dismissal of the petition, finding that the trial court had no jurisdiction to enter the order because Louise failed to properly serve Arnold. Zoglauer v. Zoglauer, No. 85-540 (Ill.App. June 11, 1985) (unpublished order filed pursuant to Ill.S.Ct.R. 23).
 
 
 6
 In December 1986, Louise filed a second motion to vacate the dismissal of the fraudulent conveyance action, and the trial court again granted the motion. Arnold again appealed. The Illinois Appellate Court affirmed the order vacating the dismissal of the fraudulent conveyance action. Zoglauer v. Zoglauer, No. 2-87-0034 (Ill.App. Oct. 27, 1987) (unpublished order filed pursuant to Ill.S.Ct.R. 23).
 
 
 7
 During this appeal process, however, further proceedings continued in the trial court. On July 8, 1985, circuit court Judge Galasso entered an order of default against Ceszyk as a third-party defendant.
 
 
 8
 On September 27, 1988, Armstrong [an attorney for Louise] appeared in court and circuit court Judge Coffin entered an order setting aside the conveyance of the Warrenville property from Arnold to plaintiff, and ordered that the property be sold and the proceeds used to pay back child support, future child support and attorney fees.
 
 
 9
 On May 31, 1989, the court granted Louise's motion to vacate the September 27, 1988 order. Thus, plaintiff is apparently still the legal owner of the property, and continues to live there with Arnold.
 
 
 10
 In September 1988, Plaintiff filed this civil rights action, seeking $5 million in compensatory damages and $10 million in punitive damages, a declaratory judgment that her rights had been violated, and an order striking her name from all documents filed in the divorce action.
 
 
 11
 In 1989, the district court dismissed the state judges on immunity grounds. The district court also dismissed claims against the DuPage County Sheriff, Deputy Sheriff and the County of DuPage. In 1991, the district court entered summary judgment in favor of the remaining defendants, Cuneo, Armstrong and MacGaffey. A timely appeal was filed.
 
 Discussion
 
 12
 Plaintiff alleges that summary judgment was improper because there is sufficient evidence to show that defendants conspired to deprive plaintiff of her constitutional rights under the Fourth, Seventh and Fourteenth Amendments by attempting to set aside as a fraudulent conveyance the transaction through which Arnold conveyed the home to plaintiff.
 
 
 13
 Summary judgment is proper where the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56.
 
 I. The Judicial Defendants
 
 14
 The district court properly dismissed the two Illinois circuit court judges from the suit, under the doctrine of absolute immunity. Cleavinger v. Saxner, 474 U.S. 193 (1985); John v. Barron, 897 F.2d 1387, 1392 (7th Cir.), cert. denied, 498 U.S. 821 (1990). The Illinois circuit court judges acted within their subject matter jurisdiction when they entered orders in the divorce case ( In re Marriage of Wojcicki, 135 Ill.App.3d 248, 251-52, 481 N.E.2d 939 (1985) (judges of Illinois domestic relations division of circuit court have original subject matter jurisdiction to hear all justiciable matters brought before them)), and the acts were performed within the judges' judicial capacity. See Stump v. Sparkman, 435 U.S. 349, 356-57, 362-63 (1978) (two-part test for determining whether judges are absolute immune).
 
 
 15
 Plaintiff argues that the state court judges had no jurisdiction over her because she was not properly served or made a party to the divorce action. Whether plaintiff was properly served is not the question. Rather, the key is that here, the judges involved never acted outside the subject matter invested by law in the court where they sat. See Stump, 435 U.S. at 356, n. 6; Dellenbach v. Letsinger, 889 F.2d 755, 760-61 (7th Cir.1989), cert. denied, 494 U.S. 1085 (1990).
 
 
 16
 Plaintiff also argues that the judges are not immune because plaintiff did not deal with them in their official capacity. This argument was rejected in Stump, 435 U.S. at 360-61.
 
 II. The County Defendants
 
 17
 The district court also properly dismissed defendants Doria, Rinck and the County of DuPage from the suit.
 
 
 18
 Service by the Sheriff's office pursuant to Illinois statute (Ill.Rev.Stat., ch. 34, par. 3-6019 (1985)) is a ministerial act performed at the direction of or under the supervision of a judge, and thus is an act protected by quasi-judicial absolute immunity. Dellenbach v. Letsinger; Henry v. Farmer City State Bank, 808 F.2d 1228, 1239 (7th Cir.1986); Ashbrook v. Hoffman, 617 F.2d 474 (7th Cir.1980). Moreover, the circuit court judge recognized the error in service and remedied that error by dismissing the petition against plaintiff. Thus, the error could not be said to have caused, pursuant to the conditions for § 1983 liability, the constitutional deprivation alleged by plaintiff in the present action. See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983); McBride v. Soos, 679 F.2d 1223, 1227 (7th Cir.1982).
 
 
 19
 In regard to the county defendant, no liability could exist where the county performed no official act since the sheriffs and judges are not policymaking officials. See Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978); Woods v. Michigan City, 940 F.2d 275, 278 (7th Cir.1991); Thompson v. Duke, 882 F.2d 1180, 1187 (7th Cir.1989), cert. denied, 495 U.S. 929 (1990).
 
 III. The Private Defendants
 
 20
 In order to succeed, plaintiff must allege state action which would bring the private defendants under color of state law for § 1983 purposes, and the deprivation of a federally protected right. Carey v. Piphus, 435 U.S. 247, 254-57 (1978). A private party may be held liable for constitutional violations if that party agreed with a public actor to violate a person's constitutional rights. Dennis v. Sparks, 449 U.S. 24, 27 (1980) (joint action theory); Cunningham v. South Lake Center for Mental Health, Inc., 924 F.2d 106 (7th Cir.1991); Moore v. Market Place Restaurant, Inc., 755 F.2d 133, 1352 (7th Cir.1985). Thus, it is essential that plaintiff show an agreement between the public and private actors to violate her constitutional rights. Cunningham, 924 F.2d at 107.
 
 
 21
 Plaintiff alleges that the private defendants entered into a conspiracy with state officials in order to deprive her of the property. In support of the private defendants' motion for summary judgment, however, several uncontradicted affidavits were submitted. Judge Galasso's and Judge Coffin's affidavits stated that neither was a party to any scheme, plan or design to deprive plaintiff of any property or other rights without allowing her an opportunity to be heard. In addition, the private defendants' affidavits stated that they had never engaged in ex parte communication or any scheme, plan or design to deprive plaintiff of her property without affording her an opportunity to be heard. Defendants also relied on plaintiff's own deposition testimony which revealed that she had no knowledge of any ex parte communication between the private defendants and the circuit court judges.
 
 
 22
 These facts remain uncontradicted. Whether or not plaintiff was ever served with a summons and complaint in connection with the petition to set aside the conveyance of the property to her by Arnold is not relevant to the constitutional allegations, absent any indication of a conspiracy between the private defendants and public officials. Plaintiff has failed to show sufficient evidence, at the summary judgment stage, of an improper agreement between private defendants and state officials, or any intent by state officials to deny plaintiff her constitutional rights. See Greco v. Guss, 775 F.2d 161 (7th Cir.1985).
 
 
 23
 Moreover, even if plaintiff had succeeded in passing the initial hurdle of showing a conspiracy between the private and public defendants, she would have considerable difficulty. Plaintiff argues that the lis pendens notices and judgment liens filed in relation to the fraudulent conveyance petition clouded her title and inhibited her use of the land in violation of her rights under the Fourth and Fourteenth Amendments.
 
 
 24
 Plaintiff failed to include any allegations to support a viable claim of class-based discrimination, contrary to the equal protection clause. In regard to her Fourth Amendment claim, plaintiff fails to argue that imposing a lien constitutes a deprivation of property under the constitution, or a conspiracy to deprive her of the property.[4]
 
 
 25
 Concerning plaintiff's claim of procedural due process[5] even if a lis pendens notice or lien constituted a deprivation of property, which we need not decide here, plaintiff must show that the alleged deprivations resulted from established state procedure. Easter House v. Felder, 910 F.2d 1387, 1396 (7th Cir.1990) (en banc ), cert. denied, 111 S.Ct. 783 (1991).[6] And even if they were assumed to be random and unauthorized acts, such conduct would only be actionable in a suit under § 1983 if the plaintiff lacked adequate remedies under state law. See Zinermon v. Burch, 110 S.Ct. 975, 985 (1990). Here, plaintiff had adequate state law remedies.
 
 
 26
 Plaintiff could have intervened in the pending fraudulent conveyance lawsuit, alleging that the suit may have adversely affected the disposition of her property. Ill.Rev.Stat., ch. 110, par. 2-408 (1985). Plaintiff also could have filed a special appearance to contest jurisdiction. Ill.Rev.Stat., ch. 110, par. 2-301 (1985). Plaintiff might also have filed an action to quiet title in order to remove any cloud on the title. Allensworth v. First Galesburg National Bank and Trust Co., 7 Ill.App.2d 1, 128 N.E.2d 600 (1955). We agree with the district court's conclusion:
 
 
 27
 "The numerous procedural issues raised by plaintiff Ceszyk indicate[ ] that she may have a valid objection to the manner in which defendants have pursued their fraudulent conveyance action in the state courts. Her proper avenue of redress, however, is to bring her array of arguments to the attention of the state courts themselves, something which she has apparently never done. As plaintiff Ceszyk has available to her adequate state court remedies for the alleged harm to her property interest in the Warrenville residence, she has not been deprived [of] due process of law."
 
 
 28
 For these reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record
 
 
 [2]
 The named defendants were Michael R. Galasso and Margaret O. Coffin, circuit court judges in DuPage, Illinois; Louise MacGaffey (f/k/a Louise Zoglauer); Francis J. Cuneo and Thea Armstrong, MacGaffey's defense attorneys; Paul Doria as acting sheriff of DuPage County; Sheriff's Deputy Roger Rinck; the County of DuPage
 
 
 [3]
 It is unclear whether or not Arnold Zoglauer, the owner of the home, was living in the home at that time. As of 1990, however, plaintiff was living in the home with her son and Arnold Zoglauer
 
 
 [4]
 The United States Supreme Court held in Soldal v. Cook County, Illinois, 113 S.Ct. 538 (1992), that an eviction or repossession incident to a civil property dispute was actionable under the Fourth Amendment. In Soldal, however, there was sufficient showing of state action where the deputy sheriffs, knowing that no eviction order existed, stood by and watched the private defendants damage and move plaintiff's mobile trailer home; and the deputy sheriffs prevented plaintiff from exercising his common law right to defend his property
 
 
 [5]
 Plaintiff includes no argument about the Seventh Amendment in her brief, presumably agreeing with the district court's finding that the Seventh Amendment claim is actually an aspect of the due process claim in the context on this suit. See Maisano v. Welcher, 940 F.2d 499 (9th Cir.1991) (due process and Seventh Amendment arguments viewed together where plaintiff claims properly was seized without hearing after assessment of tax liability)
 
 
 [6]
 Cf. Soldal v. County of Cook, 923 F.2d 1241, 1248 (7th Cir.1991) (panel decision, finding that "random and unauthorized" is a "good description of the acts of the deputy sheriffs" who stood and watched as private defendants damaged, seized and moved plaintiff's trailer home), reh'g. en banc, 942 F.2d 1073 (7th Cir.1991), rev'd. on other grounds, 113 S.Ct. 538 (1992)