**ALLIED/ROYAL PARKING L.P., a Limited Partnership; Robert Silberman; Bruce Silberman, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 97–55755.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1998.

Decided Feb. 1, 1999.

Willard D. Horwich, Los Angeles, California, for the plaintiffs-appellants.

Donald B. Tobin, Tax Division, United States Department of Justice, Washington, D.C., for the defendant-appellee.

Before: GOODWIN, BOOCHEVER, and TASHIMA, Circuit Judges.

BOOCHEVER, Circuit Judge:

In this case, we must determine whether 26 U.S.C. § 7433(a) confers a taxpayer with standing to sue the United States where the Internal Revenue Service places a wrongful levy on property that does not belong to the taxpayer, but where the taxpayer nonetheless suffers an injury from the failure to release the levy.

## FACTS

Allied/Royal Parking L.P. ("Allied") is a California limited partnership that provided parking management services in Los Angeles from 1990 through 1994. Bruce Silberman ("Bruce"), and Robert Silberman ("Robert") were limited partners of Allied. During 1991 through 1994, Allied failed to pay over $265,000 in payroll taxes incurred from its business operations.

One of Allied's contracts involved managing a parking garage owned by Southpark Associates ("Southpark"). Under the Allied–Southpark Parking Agreement ("Agreement"), Allied would earn a management fee of $1,000 per month and a percentage of the net income from the garage. As part of its management duties, Allied would collect all parking receipts for Southpark, and after deducting Allied's fees and operating expenses, Allied would deliver a check on the twentieth of every month for the remaining balance to Cushman & Wakefield of California, Inc. ("Cushman"), Southpark's agent. Allied kept all the monthly parking receipts in an account at the International Bank of California ("International Bank"). Allied maintained complete control over this account, which Allied named the "Allied/Royal Parking, L.P. 888 Account," presumably to reflect the address of the parking garage at 888 So. Figueroa Street in Los Angeles. Bruce and Robert, as well as other Allied limited partners, were the sole signatories on the account. Nothing in the bank account records indicated that the account was opened or maintained in formal trust on behalf of Southpark. The Agreement also did not specify that the collected parking receipts had to be specially placed in a trust account, or that Allied's profits and fees had to be segregated from Southpark's remaining revenue.

During 1993 and 1994, Allied was unable to pay off its debts, including its federal payroll tax liabilities. The Internal Revenue Service ("IRS") assigned Revenue Officer James Wong to collect the delinquent taxes. In 1993, Wong visited Allied's office and spoke to Ken Simons, Allied's vice president in charge of financial matters, who informed Wong that Allied would be unable to pay off its delinquent taxes. After the parties were unable to agree on an installment payment schedule, Wong issued tax levies on all of Allied's accounts receivables.

On September 19, 1994, Wong served a levy on International Bank to seize any property belonging to Allied in International Bank's possession. International Bank froze Allied's account containing the parking receipts. The account contained up to $40,000 at the time of the levy. The next day, Allied delivered a check to Cushman for almost $23,000, representing what Allied owed Southpark under the Parking Agreement. At the same time, the Bank wrote a letter to Allied informing Allied of the IRS levy on the account.

Upon receiving International Bank's letter on September 22, Allied, through its counsel, Howard Rosenblatt, called Wong and asked him to release the levy on the bank account. Rosenblatt explained that the funds in the account were not Allied's, and that Allied would lose its parking management contract with Southpark if the IRS did not immediately release the levy so that Southpark could be paid. Wong responded that Allied had a poor history of paying its payroll taxes, and questioned whether the funds were really held in trust. Wong stated that the account was in Allied's name, that it was under Allied's control, and that the account records did not indicate that it was a trust account. Further, Wong stated his belief that a majority of the money belonged to Allied. After Allied's check written to Southpark bounced, Cushman wrote to Robert and informed him that Allied was in danger of breaching the Parking Agreement, and Southpark would

terminate the Agreement if payment was not received by Cushman within five business days of September 22.

On September 26, Wong consulted with agents in the IRS's Special Procedures Function ("SPF") unit, consisting of senior revenue officers who provide guidance on specialized subjects, such as seizures or liens. SPF Advisor Chris Margos advised Wong if the money in the levied account did not belong to Allied, then a wrongful levy claim should be filed, but that Allied lacked standing to bring the claim. The next day, on September 27, Wong consulted with another SPF advisor, Spencer Kell, who told Wong that only the third party owner of the funds could make or file the wrongful levy claim, and that in any event, Wong did not have authority to release the levy.

That same day, Rosenblatt spoke with Irene Carroll, an IRS attorney in the IRS District Counsel's office. She told Rosenblatt that if Allied did not own the money, then Allied was not the proper party to file the wrongful levy claim. If the money was held in trust, then Allied could file the claim, but Carroll stated that she would need proof of the trust relationship. Carroll advised Rosenblatt that from the information gathered thus far, the IRS had a reasonable basis for concluding that the funds belonged to Allied and were not held in trust.

On September 29, Wong met with Simons, and Simons provided some of the bank account documents. The documents showed that Southpark's name did not appear anywhere on the account, and nothing indicated that the account was a trust account. Fur-

ther, Bruce and Robert, as well as other Allied limited partners, were the only signatories on the account, and two checks totalling over $5,000 had been made out to "cash." After reviewing Allied's accounts receivables records, Wong concluded that Allied was insolvent, and otherwise had no other means of paying off its taxes. Based on this review, Wong refused to release the levy.

On September 30, Wong informed Rosenblatt that the levy would not be released. Southpark informed Allied that they had materially breached the Parking Agreement for failure to pay the monthly revenue and that Southpark had terminated the Agreement. On October 11, Southpark filed an administrative claim for a wrongful levy, and supplied information to support its claim. Based on a review of this information, the IRS determined that the levy was indeed wrongfully placed, and released the levy in January 1995.

## PROCEEDINGS

Allied, and Robert and Bruce in their individual capacities ("plaintiffs"), sued the United States in district court pursuant to 26 U.S.C. § 7433 alleging that Wong intentionally or recklessly disregarded three provisions of the Internal Revenue Code ("IRC") when he failed to release the levy on the International Bank account.[1] Specifically, the plaintiffs alleged violations of: (1) section 6331(a), authorizing the IRS to place levies on properties or rights of delinquent taxpayers;[2] (2) section 6343(a)(1), providing for the release of levies under IRS regulations;[3]

1. Section 7433 provides:

    If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. 26 U.S.C. § 7433(a).

2. Section 6331(a) provides, in pertinent part:

    If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax ... by levy upon all property and rights to property ... belonging to such person....

26 U.S.C. § 6331(a).

3. Section 6343(a) provides, in pertinent part:

    (1) In general—Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if—
    * * *
    (B) release of such levy will facilitate the collection of such liability, [or]
    * * *
    (D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer....

and (3) section 7426(a), allowing third persons to sue when their property or rights are subject to a wrongful levy.[4] In a non-jury trial, the district court found in favor of the United States and held that the IRS did not intentionally or recklessly violate any statute or regulation of the IRC in connection with the collection of a tax. The district court entered judgment for the United States, and the plaintiffs timely appealed. We have jurisdiction under 28 U.S.C. § 1291. We review the existence of subject matter jurisdiction de novo. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1153 (9th Cir.1998).

## DISCUSSION

■■■ The United States as sovereign may not be sued without its consent, *Hodge v. Dalton,* 107 F.3d 705, 707 (9th Cir.), *cert. denied,* ––– U.S. –––, 118 S.Ct. 62, 139 L.Ed.2d 25 (1997), and the "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), *overruled on other grounds, Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Thus, section 7433's limited waiver to the government's sovereign immunity must be read narrowly.

I. *Jurisdiction over Claims Brought By Bruce and Robert*

■■■ Bruce and Robert Silberman sued the IRS under 26 U.S.C. § 7433, both as limited partners and officers of Allied, and in their individual capacities. The government argues that Bruce and Robert lack standing to sue the United States because they are not "taxpayers" as that term is used in § 7433. In response, the plaintiffs assert that to deny Bruce and Robert standing would leave them without a remedy, and that result would go against the intent of the statute.

This court has expressly held that " § 7433(a) requires that [the plaintiff] be 'such taxpayer' from whom the IRS collected the tax ...; that is, the direct taxpayer, not

26 U.S.C. §§ 6343(a)(1)(B) & (D).

a third party." *Ferrel v. Brown,* 847 F.Supp. 1524, 1528 (W.D.Wash.1993) (internal citation and emphasis omitted), *aff'd,* 40 F.3d 1049 (9th Cir.1994) (per curiam) (adopting district court opinion). The plaintiffs concede that the plain language of the statute and *Ferrel* both would limit a cause of action only to "such taxpayers" from whom the IRS is attempting to collect. The plaintiffs argue, however, that the intent of the statute was to protect taxpayers from IRS abuse, and that the plain language of the statute and the holding of *Ferrel* should be disregarded because they conflict with legislative intent. The plaintiffs' argument has no merit.

First, the plaintiffs' proposed reading of § 7433 would imply a very broad exception to the government's sovereign immunity, in contravention of the principles underlying sovereign immunity. *See Soriano,* 352 U.S. at 276, 77 S.Ct. 269. Second, denying Robert and Bruce standing to sue does not conflict with legislative intent. Where Congress intends to provide a cause of action for a broad class of plaintiffs, it has used unambiguous language to do so. For example, if a person's property has been wrongfully levied upon to satisfy the tax obligation of another person, the wrongful levy statute provides a cause of action to "*any person* (other than the person against whom is assessed the tax out of which such levy arose)" to recover his or her property. 26 U.S.C. § 7426(a)(1) (emphasis added). This supports the government's position "that Congress intended to create a more restricted class of potential plaintiffs when it used the word 'taxpayer' in § 7433." *Wilkerson v. United States,* 839 F.Supp. 440, 442–43 (E.D.Tex.1993); *see also Ferrel,* 847 F.Supp. at 1528; *Matrix Dev. Corp. v. United States,* 815 F.Supp. 297 (E.D.Wis.1993); *Progressive Bank & Trust Co. v. Moore,* 91–1 U.S. Tax Cas. (CCH) 50,192 (E.D.La.1991). Without a valid waiver of sovereign immunity, the claims brought by Robert and Bruce in their individual capacities were properly dismissed by the district court. *See Gilbert v. DaGrossa,* 756 F.2d 1455, 1458 (9th Cir.1985).

4. 26 U.S.C. § 7426(a)(1) is quoted in the text below.

## II. *Jurisdiction over Allied's Claims*

■ Allied was the target of the IRS's collection efforts, so for purposes of § 7433, Allied is the relevant "taxpayer." Still, the government argues that Allied lacks standing to sue because Allied had no cognizable interest in the levied funds.

Allied alleges that IRS agent Wong violated §§ 6331(a) and 7426(a) by wrongfully levying the funds in the International Bank account when the funds in fact belonged to Southpark. Allied further alleges that Wong violated § 6343 when he refused to release the levy at Allied's request. As a result of these alleged violations of the tax laws, Allied contends that it lost its contract with Southpark. Allied asserts that these facts are sufficient to confer standing on Allied to sue under § 7433. Allied also argues that to deny Allied standing would leave it without an adequate remedy, and that result, again, would go against the intent of the statute.

We have not yet addressed the issue whether a party in Allied's position—that is, where the party bringing the claim does not own the property subject to the wrongful levy—has standing to sue under § 7433. In *Maisano v. Welcher,* 940 F.2d 499 (9th Cir. 1991), however, this court was presented with a similar issue. In *Maisano,* the IRS seized a truck that allegedly belonged to the plaintiffs in order to satisfy the plaintiffs' tax deficiencies. The plaintiffs argued that the truck actually belonged to a trust, of which the plaintiffs were trustees. The plaintiffs sued the IRS for, among other things, violating their constitutional rights by seizing the truck. They did not, however, sue under § 7433. The court stated that it was unclear whether the plaintiffs or the trust were the actual owner of the truck, but held that it did not matter because in either case, the plaintiffs would lose. "If the [truck] belongs to the trust, the [plaintiffs] have no standing to sue and their case must be dismissed. If the [truck] actually belongs to the [plaintiffs], they lose their argument that the IRS seized property belonging to the wrong party." *Id.* at 501.

Although the claim in *Maisano* was not brought under § 7433, the same reasoning applies to this case. Because Allied did not own the funds in the International Bank account, Allied cannot assert a claim for injury from its wrongful deprivation, and it further cannot claim any injury on behalf of a third party. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (holding that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Northern Plains Resource Council v. Lujan,* 874 F.2d 661, 667 (9th Cir.1989) (holding that the plaintiff lacked standing to challenge the validity of a land patent unless the plaintiff asserts a legal property interest in the land).

In determining whether Congress intended to give a party in Allied's position a cause of action under § 7433, it is useful to recognize that Allied would also lack standing to sue the United States for wrongful levy under § 7426, and the inconsistencies that would arise if we were to grant Allied standing to sue for the same wrongful levy action under § 7433.

Section 7426 provides:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (*other than the person against whom is assessed the tax out of which such levy arose* ) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

26 U.S.C. § 7426(a) (emphasis added). Thus, section 7426 expressly excludes from those authorized to bring a wrongful levy action the taxpayer against whom the IRS is seeking to collect the taxes. *See Shannon v. United States,* 521 F.2d 56, 59 (9th Cir.1975). To grant Allied standing in this case under § 7433 would circumvent this restriction and would lead to the illogical result that a taxpayer who is the target of the IRS's collection efforts would have standing to sue only if it did not own the levied property.

Section 7426 also requires that only a party with a sufficient possessory interest in the property may bring a claim for wrongful levy. This court has explained:

> Section 7426 contains two distinct prerequisites to its application: (1) that the plaintiff have an interest in or lien on the property at issue, and (2) that the levy be wrongful (i.e., that the property not be the taxpayer's). The first of these requirements ensures standing. . . .

*Flores v. United States,* 551 F.2d 1169, 1171 (9th Cir.1977). *See also Frierdich v. United States,* 985 F.2d 379, 383 (7th Cir.1993) ("the right of a third party to challenge a wrongful levy is confined to persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon"); *Aspinall v. United States,* 984 F.2d 355, 357 (10th Cir.1993) ("Under § 7426, a plaintiff must make an initial showing of some interest in the property levied on to have standing."); *Valley Finance, Inc. v. United States,* 629 F.2d 162, 168 (D.C.Cir. 1980).

The district court found that Allied was not holding the funds in formal trust on behalf of Southpark, and thus did not have a sufficient possessory interest in the levied funds. The fact that Allied suffered a harm as a result of the wrongful levy of funds belonging to Southpark is irrelevant because the only type of injury that § 7426 protects is the deprivation of property from those who have a cognizable right to that property. *See Valley Finance,* 629 F.2d at 168 (stating that only parties with cognizable interest in the property come within the "zone of interests" protected by § 7426). Because Allied lacked a sufficient possessory interest in the levied funds, it would not have standing to sue under § 7426 for wrongful levy, and it would be illogical to grant Allied standing for such an action under § 7433.

With respect to Allied's claims under §§ 6331 and 6343, this court has stated that "the exclusive remedy by a third party whose property has been levied upon or sold by the [IRS] is an action pursuant to Section 7426." *Winebrenner v. United States,* 924 F.2d 851, 855 (9th Cir.1991). *See also Fidelity and Deposit Co. of Maryland v. City of Adelanto,* 87 F.3d 334, 335 (9th Cir.1996) (reaffirming the viability of *Winebrenner* after *United States v. Williams,* 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995)). Even assuming that Allied had standing to bring an action for wrongful levy under § 7426(a), it would be limited only to that claim, and it could not bring a claim under § 7433 alleging violations of §§ 6331 and 6343.

Further, the party's remedies under § 7426 are strictly limited. Section 7426(b) provides that "[t]he district court shall have jurisdiction to grant only such of the following forms of relief as may be appropriate in the circumstances," including an injunction, return of the property, or if the property has already been sold, recovery of the property's value. *See* 26 U.S.C. § 7426(b)(1)-(2). Additional compensatory or punitive damages are not available. *See Ferrel,* 847 F.Supp. at 1527.

It is clear that a party in Allied's position does not have standing to sue under § 7433 for alleged violations of §§ 6331 and 6343, and it cannot recover compensatory damages under § 7433 because even a party with standing to assert a claim under § 7426 would be limited to the specified remedies. For the foregoing reasons, we hold that a taxpayer lacks standing to sue under § 7433 for damages when the IRS places a wrongful levy on property that does not belong to the taxpayer. We dismiss Allied's claims against the United States for lack of jurisdiction.

## CONCLUSION

Because we dismiss all claims brought by Allied, Bruce and Robert for lack of jurisdiction, we need not reach the merits of their claims. We note, however, that the district court's factual findings that the IRS agents did not act recklessly or intentionally disregard any provision of the tax code were amply supported by the record. There was simply no evidence that the International Bank account was a formal trust account maintained by Allied on behalf of Southpark. Rather, the evidence showing that the Silbermans were the only signatories on the account and that checks had been drawn to "cash" contradicted Allied's claims. The levy

.was eventually released as to the check issued to Southpark, but only after Southpark filed a wrongful levy action under § 7426.

The district court's judgment, which was a judgment on the merits, is vacated and the case remanded to the district court with directions to dismiss the action. Costs to appellee.

VACATED AND REMANDED.