# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

JUAN PINEDA-MORENO,
         *Defendant-Appellant.*

No. 08-30385

D.C. No.
1:07-CR-30036-
PA-1

OPINION

On Remand from the United States Supreme Court

Argued and Submitted
May 31, 2012—Portland, Oregon

Filed August 6, 2012

Before: Diarmuid F. O'Scannlain and N. Randy Smith,
Circuit Judges, and Charles R. Wolle, District Judge.*

Opinion by Judge O'Scannlain

*The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa, sitting by designation.

## COUNSEL

Harrison Latto, Portland, Oregon, argued the cause and filed the supplemental brief for the defendant-appellant.

Kelly Zusman, Appellate Chief, District of Oregon, Eugene, Oregon, argued the cause and filed the supplemental brief for the plaintiff-appellee. With her on the brief were S. Amanda Marshall, United States Attorney, District of Oregon, Eugene, Oregon, and Amy E. Potter, Assistant United States Attorney, Eugene, Oregon.

## OPINION

O'SCANNLAIN, Circuit Judge:

In this matter which arose prior to the Supreme Court's decision in *United States v. Jones*, 132 S. Ct. 945 (2012), we must decide whether to apply the exclusionary rule where law enforcement agents attached mobile tracking devices to the

underside of a defendant's car and used those devices to track the car's movements.

I

In 2007 the Drug Enforcement Administration ("DEA") came to suspect that Juan Pineda-Moreno was growing marijuana in the back country of southern Oregon. That suspicion arose on May 28, when a DEA agent saw Pineda-Moreno and some other men pay cash for a large amount of a fertilizer favored by local marijuana growers. The men loaded the fertilizer into a Jeep Grand Cherokee that belonged to Pineda-Moreno.

The DEA began to investigate the men and to monitor the travels they made in Pineda-Moreno's Jeep (which had California license plates) and in a second Jeep with Oregon license plates. The DEA's surveillance disclosed that the men bought large quantities of food in the first half of June, that they bought deer repellent and a portable hand sprayer that same month, and that they visited an irrigation supply store in late June. The DEA eventually tailed the men to a single-wide mobile home in Phoenix, Oregon. The agents observed that the mobile home did not appear to have a deer problem or an irrigation system. That information supported the agents' suspicion that the men were involved in a remote grow operation: Irrigation equipment would facilitate such an operation, as would a spray designed to keep deer away from crops. The large food buys were also consistent with the needs of a remote operation. The home was, moreover, located in a mobile home park that, according to the DEA, was known for drug activity.

Suspicion mounted when the agents tailed the Oregon-plated Jeep on June 29. During that trip, the Jeep began traveling "in a very strange manner" as the driver seemed to be looking around for law enforcement. At one point, a man in

the Jeep seemed to write down the license plate numbers of some of the surveillance vehicles.

Until the end of June, the DEA had tracked the suspects' movements through visual surveillance and witness reports. That changed in July. On seven occasions from then until September, the agents attached mobile tracking devices to the underside of Pineda-Moreno's Jeep. On four of those occasions, the Jeep was on the public street in front of Pineda-Moreno's mobile home; once it was in a public parking lot; and twice it was on Pineda-Moreno's driveway in front of the carport. The driveway—which was a few feet from the south side of Pineda-Moreno's home—had no fence, gate, or "No Trespassing" signs on or near it.

Agents used the devices to monitor the movements of Pineda-Moreno's Jeep. The devices allowed the agents to pinpoint the Jeep's location using cellular towers or satellites; one of the devices also logged data that could later be downloaded to detail where the Jeep had traveled. By monitoring Pineda-Moreno's Jeep the agents learned that it traveled to two suspected marijuana grow sites on July 6, August 14, August 16, and September 12. The devices used during those grow-site visits had been attached to the Jeep when it was either on a public street or in a public parking lot.

Based on the information from the tracking devices and from their earlier surveillance, the DEA and other law enforcement agents stopped Pineda-Moreno's Jeep on September 12. The three men inside were taken into custody for immigration violations. Pineda-Moreno then consented to a search of his mobile home. That search uncovered two large garbage bags that contained marijuana.

## II

In November 2007 Pineda-Moreno was indicted in the District of Oregon for conspiring to manufacture marijuana and

for manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846. He moved to suppress the evidence derived from using the mobile tracking devices (which had helped to establish cause for the September 12 stop and led to Pineda-Moreno consenting to a search of his home). He argued that the agents violated the Fourth Amendment's prohibition against "unreasonable searches and seizures" by attaching the devices to his car and by trespassing on his driveway to do so, all without a warrant. The district court denied the motion.

Pineda-Moreno then pleaded guilty to the conspiracy charge, but reserved the right to appeal the denial of his motion to suppress. The district court accepted the plea, dismissed the manufacturing count of the indictment, and sentenced Pineda-Moreno to 51 months' imprisonment and five years' supervised release.

We affirmed the denial of Pineda-Moreno's motion to suppress, concluding that the installation and use of the tracking devices was not a Fourth Amendment search. 591 F.3d 1212, 1214-17 (9th Cir. 2010). Pineda-Moreno thereafter filed a petition for certiorari in the Supreme Court of the United States. *See* S. Ct. No. 10-7515.

Subsequent to our decision, the U.S. Supreme Court decided *Davis v. United States*, 131 S. Ct. 2419 (2011), and *United States v. Jones*, 132 S. Ct. 945 (2012). *Davis* holds that "searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 131 S. Ct. at 2423-24. *Jones* holds that the government's installation of a Global Positioning System (GPS) tracking device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a "search" under the Fourth Amendment. 132 S. Ct. at 949.

After issuing the latter decision, the Supreme Court granted Pineda-Moreno's certiorari petition, vacated our judgment in

the case, and remanded to our court so that we could consider it further in light of *Jones*. 132 S. Ct. 1533 (2012).

### III

On remand Pineda-Moreno once again asks us to suppress the evidence derived from the DEA's mobile tracking devices. Invoking *Davis*, the United States contends that even if its agents' tracking-device conduct is unconstitutional under *Jones*, suppression is unwarranted because the agents acted in objectively reasonable reliance on binding precedent when they attached and used the tracking devices.

**[1]** *Jones* has made clear that the agents conducted Fourth Amendment searches when they attached tracking devices to Pineda-Moreno's Jeep and used the devices to monitor the Jeep's movements. Indeed, for purposes of this remand we will assume, without deciding, that those warrantless searches would be "unreasonable" under the Fourth Amendment after *Jones*.

But *Jones* had not been decided when those searches occurred. And when the agents attached and used the mobile tracking devices that yielded the critical evidence, they did so in objectively reasonable reliance on then-binding precedent. In 2007, circuit precedent held that placing an electronic tracking device on the undercarriage of a car was neither a search nor a seizure under the Fourth Amendment. *United States v. McIver*, 186 F.3d 1119, 1126-27 (9th Cir. 1999). Circuit law also held that the government does not violate the Fourth Amendment when it uses an electronic tracking device to monitor the movements of a car along public roads. *United States v. Hufford*, 539 F.2d 32, 34 (9th Cir. 1976); *see United States v. Miroyan*, 577 F.2d 489, 492 (9th Cir. 1978) (stating that "the monitorial use of [an electronic] tracking device cannot constitute a search" under the Fourth Amendment) (emphasis omitted).

Our circuit precedent may also have permitted the agents to walk onto Pineda-Moreno's driveway to attach the devices to his Jeep. As of 2007 we had held that, "to establish a reasonable expectation of privacy in [one's] driveway"—and thus to obtain Fourth Amendment protection for it—one "must support that expectation by detailing the special features of the driveway itself (i.e. enclosures, barriers, lack of visibility from the street) or the nature of activities performed upon it." *Maisano v. Welcher*, 940 F.2d 499, 503 (9th Cir. 1991); *see also United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975) ("A driveway is only a semiprivate area."). Pineda-Moreno's driveway was visible from the street, had no fence or gate, and did not have "No Trespassing" signs on or near it.

But we need not resolve whether the agents were authorized in 2007 to walk onto Pineda-Moreno's driveway because, even without the evidence obtained from the driveway-attached tracking devices, the government had amassed enough other evidence, in good faith reliance on binding precedent, to justify the September 12 stop of Pineda-Moreno's Jeep. The tracking-device attachments made in public areas showed four trips to suspected grow sites. That information supplemented the evidence obtained before the devices were used: the fertilizer buy, the purchase of deer spray and a hand sprayer, the visit to the irrigation supply store, the evasive driving, the large food buys, and the observations that the mobile home had no irrigation system or deer problems. The driveway attachments did disclose that the Jeep visited a Wal-Mart and a Home Depot on August 30, but that information was cumulative of other evidence that had been obtained in good faith.

**[2]** In short, the agents' conduct in attaching the tracking devices in public areas and monitoring them was authorized by then-binding circuit precedent. Those attachments yielded the critical information that justified stopping Pineda-Moreno. Whatever the effect of *Jones*, then, the critical evidence here

is not subject to the exclusionary rule. *See Davis*, 131 S. Ct. at 2423-24.[1]

IV

**[3]** We recognize that *Jones* at least partially overrules *McIver*, *Hufford*, and *Miroyan*, and may also affect the vitality of *Maisano* and *Magana*. We can address the effect of *Jones* more fully in future cases. For today, it is enough to conclude that suppression is not warranted here because the agents objectively relied on then-existing binding precedent when they approached Pineda-Moreno's Jeep in public areas, attached tracking devices to it, and used those devices to monitor the Jeep's movements.

AFFIRMED.

---

[1]In light of our conclusion, we deny Pineda-Moreno's pending Motion for Leave to Submit Supplemental Briefs.