**Raffi SOGHOMONIAN and Deborah Garabedian, Plaintiffs,**

v.

**The UNITED STATES of America, The Internal Revenue Service, Fidelity National Title Insurance Company, Trans Union LLC, and DOES 1–50, inclusive, Defendants.**

**No. CV F 99–5773 AWI DLB.**

United States District Court,
E.D. California.

Dec. 21, 1999.

Deborah Garabedian, Fresno, CA, for plaintiffs.

Michael J. Desmond, United States Dep't. of Justice, Tax Division, Washington, DC, for United States.

Margery Q. Lee, Walnut Creek, CA, for Fidelity National Title Insurance Company.

Rene Lastreto II, Fresno, CA, for Trans Union LLC.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AND SECOND CLAIMS FOR RELIEF AS TO DEBORAH GARABEDIAN, AND TO DISMISS, IN WHOLE, THE THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, AND NINTH CLAIMS FOR RELIEF**

ISHII, District Judge.

In this case, plaintiffs Raffi Soghomonian and Deborah Garabedian (individually, "Raffi" and "Deborah"; collectively, "Plaintiffs") are husband and wife. Deborah appears both as a plaintiff and as attorney for Raffi. They have sued the United States and the Internal Revenue Service,[1] Fidelity National Title Insurance

---

1. Although the IRS is named as a party in the caption of the Complaint, none of Plaintiffs' claims for relief (aside from the quiet title

Company ("Fidelity"), Trans Union LLC ("Trans Union"), and Does 1–50 (collectively, "Defendants"). They allege violations of laws governing tax liens and tax collection; general negligence and negligent infliction of emotional distress; unauthorized disclosure of tax information and solicitation of unauthorized disclosure; and violation of credit reporting laws. Plaintiff also have asserted a claim to quiet title, and for costs and attorney's fees.[2]

Defendants have moved to dismiss as follows: the United States moves to dismiss certain claims as to Deborah, and certain others as to both Plaintiffs, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Fidelity and Trans Union move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Trans Union requests dismissal of the seventh cause of action, and Fidelity requests dismissal of the only cause of action asserted against it: the fifth. Plaintiffs oppose these motions and, in the alternative, request leave to amend or supplement their pleadings.

On December 13, 1999, the court held a hearing on Defendants' motions, which it granted without prejudice to the filing of a Second Amended Complaint should Plaintiffs wish to do so. This Memorandum Opinion and Order sets forth the grounds for the court's ruling.

## BACKGROUND AND FACTUAL ALLEGATIONS

The following facts and background information are taken from the Complaint.[3]

Raffi and Deborah are husband and wife. Raffi is owner of a property located at 10179 E. Belmont, County of Fresno, California ("Belmont property"), in which Deborah has a one-half community property interest. Together, they are joint owners of another property located at 93 E. Robinson Street, County of Fresno, California ("Robinson property"). (*See* Compl. at 3:15–25.) Plaintiffs allege that Raffi was a victim of fraudulent activity, forgeries, and impersonations, and as a result was wrongfully implicated in a partnership with a large tax liability.[4] This resulted in the IRS instituting a series of collection activities against him beginning in 1991 or 1992, including wage garnishment and bank account attachment. (*See id.* at 4:3–5:2.) Plaintiffs allege that Raffi and Deborah disputed the validity of the claimed tax debt and attempted to resolve these matters with the IRS, but that they were unsuccessful due to the alleged misconduct of an IRS employee, Manual Arredondo ("Arredondo"). (*See id.* at 5:3–6:27.) According to Plaintiffs, Arredondo willfully and maliciously refused to provide copies of documents they requested, rejected Of-

claim which has been dismissed, see footnote 2, below) state that they are directed at the IRS in particular, but at the United States. This order will treat the IRS and the United States as the same defendant, "United States."

2. The quiet title claim has been dismissed without prejudice as moot by stipulation of Plaintiffs and the United States.

3. The first complaint in this case was filed on June 4, 1999. Following filing, a motion to dismiss was filed by Fidelity, and Plaintiffs subsequently filed their First Amended Complaint ("Complaint"). Citations in this order refer to the First Amended Complaint.

The Complaint is 87 pages long, not including attachments which are over 40 additional pages. As such, it does not comply with the "short and plain statement" requirement of Rule 8(a)(2). In the event that Plaintiffs

choose to file a Second Amended Complaint, they will be subject to page limitations that appear at the end of this order. *See Washington v. Baenziger*, 656 F.Supp. 1176, 1177–78 (N.D.Cal.1987) (86 page complaint dismissed for noncompliance with "short and plain statement" requirement of Rule 8). In addition, all future briefs and memoranda filed in this case will be subject to page limitations that appear at the end of this order.

4. Plaintiffs allege that Raffi's last name, Soghomonian, is often confused with the last name of his family members, owners of Soghomonian Farms, who are the real partnership tax debtors. They also state that there is another parcel of land known as 10179 E. Belmont which, although it has the same address as Raffi's and belongs to a member of his family, has a different Assessor's Parcel Number and is not in fact his. (*See* Compl. at 38:5–16.)

fers in Compromise (or later claimed that they were lost or never received), engaged in "invasive collection activities" against Raffi, and was generally unhelpful. (*See id.* at 7:1–8:25.) Plaintiffs contend that Arredondo and other IRS employees unreasonably and maliciously breached a "duty to investigate" which was owed both to Raffi and Deborah, (*id.* at 9:16–21), but that they were ultimately told that Raffi had been cleared of the tax liability. During the time these events were occurring, tax liens had been filed against partnership property, but none of the 1994 liens named Raffi as debtor. This led Plaintiffs to believe they had been cleared. (*See id.* at 9:22–10:9.)

In 1995, Plaintiffs attempted to sell the Belmont and Robinson properties, in anticipation of Raffi's military transfer out of state. They were thwarted, however, by the surprise appearance of new tax liens, totaling over $100,000.00, which acted to prevent Raffi from selling any property. (*See id.* at 10:19–12:7.) As a result, Raffi lost a sale and was forced to lease the property to an elderly man who ultimately broke the lease and damaged the property. (*See id.* at 10:8–13.) Plaintiffs allege that this new round of liens was filed by Arredondo with malice and in bad faith, and "without substantive or procedural due process." (*Id.* at 12:24–13:3.) As the IRS allegedly continued to engage in bad-faith and dilatory tactics, Plaintiffs determined that they would file a "Congressional Inquiry." (*Id.* at 14:7.) On or around May 16, 1995, another set of liens was filed against Raffi's name. (*See id .* at 15:9–24.) Plaintiffs allege that this new filing was improper and malicious, and done for the purpose of oppressing Raffi. (*See id.* at 15:9–16:19.) Plaintiffs assert that, due to the "Congressional Inquiry," a determination was made that Raffi was not liable for taxes incurred in the 1991–1993 tax period, but that the IRS would still seek payment of taxes owed from an earlier period, in 1990. (*See id.* at 16:20–17:22.)

In July, 1995, more tax liens were allegedly filed which, although the IRS claimed they were for the purpose of removing Raffi's name from the earlier lien documents, actually had the opposite effect: they resulted in the creation of yet another lien in Raffi's name, without eliminating any of the earlier ones. Plaintiffs allege that this filing was not in compliance with IRS regulations, was malicious, and "was done in this manner to lull them into a false sense of security." (*Id.* at 18:1–21.) As a result of the foregoing, Plaintiff allegedly suffered stress, anxiety, emotional upset, humiliation, marital discord, hopelessness, and depression. Deborah considered dropping out of law school, "was doing little to care for her infant daughter," and allegedly was unable to work (although she considered having another child). (*Id.* at 21:3–5; 22:1–6.) Deborah also was subjected to a "traumatizing" in-house interview with an IRS agent, who expressed doubt as to Plaintiffs' ability to prevail in their dispute with the IRS based on their "standard of living" as observed during the interview. (*See id.* at 22:19–24:2.) These events "psychologically impaired the entire family," (*id.* at 25:22–23), but affected Deborah the most: she allegedly suffered a miscarriage in December, 1996, and severe mental debilitation at other times, (*see id.* at 26:6–27:17); left her husband with her children at one point to live with her mother, (*see id.* at 27:19–27); and suffered other illnesses which ultimately necessitated a tonsillectomy. (*See id.* at 27:26–28:12.)

The IRS eventually prepared "non-attachment" documents in May, 1997 which were intended to clear the liens, but according to Plaintiffs did so in such a negligent fashion that Raffi was not properly cleared of liability. After being notified by Plaintiffs, the IRS allegedly attempted to correct the first non-attachment document with a second, which was also allegedly defectively drafted. (*See id.* at 29:19–31:5.) Believing the liens to be cleared, Raffi undertook to refinance the Belmont property, but discovered that liens were being reported in his credit report. He attempted to clear the credit report by writing letters to reporting agencies; however, this process took time. In the meanwhile,

up until the first part of 1998 Plaintiffs and their family members suffered from inadequate living arrangements (including Deborah's sleeping on the floor) due to the fact that, every time they tried to refinance, the tax liens would reappear and scuttle the deal. Their family life suffered as a result, as did their financial well-being, and the liens continue to resurface. (*See id.* at 31:6–35:9.)

In October, 1998, Plaintiffs discovered a house they wanted to buy, and were advised by lenders to either sell the Robinson property or to refinance the Belmont property in order to qualify for the necessary financing. They determined to do both, and to build an addition to the Belmont house. (*See id.* at 35:17–37:3.) However, the tax liens continued to appear on Raffi's credit report, and title on the Belmont property was reported by Fidelity as "not clear." (*Id.* at 37:4–28.) Plaintiffs state that they provided copies of the non-attachment documents and explained the foregoing factual situation, but that Fidelity maintained that any incorrect information was due to the IRS's failure to correctly list by number the liens that had been removed by the filing of the non-attachment documents. (*See id.* at 38:1–24.) Deborah verified that this (allegedly incorrect) information was in fact on file with the Fresno County Recorder's Office, and both plaintiffs provided signed disclosure forms bearing their Social Security numbers, which authorized Fidelity to investigate. They allege that Fidelity did not use the forms for this purpose, but negligently discounted their statements regarding Raffi's true tax liability status with respect to the Soghomonian Farm partnership and the Belmont property. (*See id.* at 38:24–40:2.) Plaintiffs allege that before they signed the authorization forms, an employee of Fidelity telephoned the IRS and engaged in an unauthorized conversation with the IRS, and "elicited unauthorized tax information" regarding Raffi's alleged status as a partner in Soghomonian Farms. (*Id* at 40:3–17.) Plaintiffs further allege that Fidelity negligently listed the name of Soghomonian

Farms on a document in connection with the Belmont refinance under the escrow number for Raffi's transaction; that Fidelity sent a copy of the document to the IRS; and that it invited the IRS to submit a demand for payment of the lien amount. (*See id.* at 40:18–26; Ex. H.) Plaintiffs contend that Fidelity similarly misused their authorization for IRS disclosures on one other occasion. (*See id.* at 40:26–41:7.) Approximately one week after this second, alleged misuse of their taxpayer disclosure authorization, in March, 1999 Deborah received a voice mail message from an employee of the mortgage company, U.S. Mortgage, informing her that not only did Plaintiffs owe taxes, they owed much more than was originally believed. According to Plaintiffs, this caused Deborah "immediate retraumatization and debilitating ongoing anxiety," including "avoidance behavior" regarding telephone messages. Plaintiffs allege that as a result, Deborah was unable to eat or sleep for several days following these events. (*See id.* at 41:13–42:3.)

Later, Deborah contacted the mortgage company to obtain the information necessary to correct the situation. She was referred by Fidelity to an IRS agent named Frank Guido, who subsequently notified her that Raffi was not liable for the taxes in question. (*See id.* at 42:4–43:6.) On March 12, 1999, she went in person to the Fidelity office, and demanded that an understanding be reached between Guido, the IRS, and Fidelity regarding the tax lien issues. However, according to Plaintiffs, she was refused permission to view Fidelity's file, and was also denied a copy. On the same day, Guido promised a new set of non-attachment documents. Plaintiffs assert that they were never delivered, and that as a result all parties involved in processing and reviewing Plaintiffs' refinance application view it with "immediate ridicule." (*Id.* at 43:7–44:8.) Plaintiffs assert that the IRS continues to call their home without leaving identifying information regarding the caller or callback number, causing Plaintiffs anxiety and inconvenience. They also allege that they have

been obligated to submit repeat claims and duplicate documentation in order to pursue the administrative claims they have attempted to prosecute. (*See id.* at 44:10–27.)

Plaintiffs assert that they continue to request that proper non-attachment documents be issued by the IRS. They state that with the help of certain congressional employees they have been able to speak with key IRS employees, who invariably promise that the liens will be released. They state that they have requested release of the liens on a monthly basis, but that correcting non-attachment documents have not yet issued. They state that they have filed an administrative claim with the IRS approximately four months ago, but that "no genuine effort" has been made to eliminate the tax liens. (*Id.* at 45:1–46:7.)

Plaintiffs allege that, due to the practices of credit reporting agencies, the status of the liens continues to be reported incorrectly. Plaintiffs state that Trans Union claimed to have investigated the reported information and verified it as "accurate," but that Trans Union never actually made any effort to verify the information until presented by Raffi with a small claims court complaint. Moreover, according to Plaintiffs, even that information which was "verified" was done so negligently, and Trans Union intentionally refused to make timely corrections when notified of errors, insisting that "if [information is] on your report, it must be accurate." (*See id.* at 46:8–48:3.) In addition, Plaintiffs assert that Trans Union maliciously solicited unauthorized disclosures of their taxpayer information for the purpose of defending the small claims court case, above. (*See id.* at 49:3–10.) Although Trans Union ultimately removed the incorrect lien information from Raffi's credit reports, it still denies liability on the ground that the wrongful actions of the IRS and others were the underlying cause. (*See id.* at 49:11–16.) Plaintiffs allege that they have been forced to take substantial time off from work to deal with the credit reporting issue, and that they have also suffered mental and emotional distress (and resulting physical maladies) as a consequence. In addition, Plaintiffs allege other pecuniary loss, such as being forced to pay higher interest rates than otherwise would have been available. (*See id.* at 50:14–52:2.)

Plaintiffs' Complaint contains eleven claims for relief, which are set forth as follows, along with the defendants these claims are directed to and their statutory basis, if any:

1. Failure to Release Liens; 26 U.S.C. section 7432 (against the United States);

2. Unauthorized Collection Activities; 26 U.S.C. section 7433 (against the United States);

3. General Negligence; 28 U.S.C. sections 2679; 1346 [Federal Tort Claims Act] (against the United States and Doe defendants);

4. Negligent Infliction of Emotional Distress; 28 U.S.C. sections 2679 and 1346 [Federal Tort Claims Act] (against the United States and Doe defendants);

5. General Negligence and Unauthorized Disclosures; 26 U.S.C. section 7431 [Internal Revenue Code] (against Fidelity and Doe defendants);

6. Civil Damages for Unauthorized Disclosures; 26 U.S.C. section 7431 [Internal Revenue Code] and 5 U.S.C. section 552(a) (against the United States);

7. Civil Damages for Solicitation of Unauthorized Disclosures; 26 U.S.C. section 7431 [Internal Revenue Code] and 5 U.S.C. section 552(a) (against Trans Union);

8. Violation of Fair Credit Reporting Laws; 15 U.S.C. section 1681 *et seq.* (against Trans Union);

9. Freedom of Information Act Violation; 5 U.S.C. section 552 (against the United States);

10. Quite Title (against IRS); and

11. For attorney's fees and costs; 26 U.S.C. section 7430 (against the United States).

Plaintiffs pray for judgment in the amount of $2 million in general damages for each of their first nine claims; for special damages according to proof; for a determination of quiet title; for legal fees and costs of suit; and for such other relief as the court may deem proper.

The United States has moved, under Rule 12(b)(1), to dismiss for lack of subject matter jurisdiction the first and second claims for relief as to Deborah; and to dismiss in whole the third, fourth, sixth, and ninth claims for relief. Trans Union has moved to dismiss Plaintiffs' seventh claim for relief. Fidelity moves to dismiss the one claim that has been asserted against it, the fifth.

Plaintiffs oppose these motions on various grounds; and in the alternative, request leave to supplement or amend their pleadings.

## LEGAL STANDARDS

### I. Motion to Dismiss under Rule 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may by motion raise the defense that the court lacks "jurisdiction over the subject matter" of a claim. Fed.R.Civ.P. 12(b)(1). Subject matter jurisdiction may be raised by any party at any time, and it is never waived: "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R.Civ.P. 12(h)(3). In a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989) (citation omitted).

A motion to dismiss for lack of subject matter jurisdiction may be "facial" (made on the basis that the allegations in the complaint fail to state grounds for jurisdiction, while at the same time assuming the allegations to be true), or may take the form of a "speaking motion" which attacks the asserted basis of jurisdiction as a question of fact. *See Thornhill Pub. Co. v. General Tel. & Electronics*, 594 F.2d 730, 733 (9th Cir.1979) (citations omitted). In the second type of challenge, the court may consider evidence presented on the jurisdictional issue, and resolve factual disputes if necessary. *See id.* (citations omitted). In this situation, no presumption of truthfulness is accorded to plaintiff's factual allegations. *See id.* (citation and quotations omitted).

 The United States may not be sued without its consent. Therefore, where the United States is a named as a defendant, absent a waiver of sovereignty the court is without jurisdiction to proceed. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. Alabama*, 313 U.S. 274, 282, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941). For this reason, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a proper basis to dismiss a complaint as against the United States, where sovereign immunity has not been waived. *See, e.g., McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). Waivers of sovereign immunity are construed narrowly and in favor of the sovereign. "Limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1003 (9th Cir.1999) (citation and quotations omitted) ("*Allied/Royal*").

A district court's ruling on the question of federal subject matter jurisdiction is reviewed de novo. *See Stock West*, 873 F.2d at 1225 (citation omitted). However, the court's factual findings related to jurisdictional issues are accepted unless "clearly erroneous." *Id.* (citation omitted).

## II. Motion to Dismiss under Rule 12(b)(6)

For purposes of a motion to dismiss under Rule 12(b)(6), the material allegations of the complaint are accepted as true. *See Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). The court is bound to give the plaintiff the benefit of every reasonable inference that can be drawn from the well-pleaded allegations of the complaint, *see Retail Clerks Intern. Ass'n, Local 1625, AFL—CIO v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963), and the complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim by which plaintiff would be entitled to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

A district court's dismissal pursuant to Rule 12(b)(6) is reviewed de novo. *See Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295 (9th Cir.1998). A dismissal without leave to amend is also reviewed de novo. *See Schneider v. California Dep't of Corrections,* 151 F.3d 1194, 1196 (9th Cir. 1998). Dismissal without leave to amend is improper "unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Id.* Dismissal with leave to amend is also subject to de novo review. *See Sameena Inc. v. United States Air Force,* 147 F.3d 1148, 1151 (9th Cir.1998).

## III. Leave to Amend

■ Under Rule 15(a), leave to amend "shall be freely given freely when justice so requires." Fed.R.Civ.P. 15(a). However, it is not error for the court to deny leave to amend where the amendment would be futile, or where the amended complaint would still be subject to dismissal. *See Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991). Futility of amendment under this rule is shown where plaintiff can prove "no set of facts" pursuant to the amended pleading which would consti-tute a valid claim or defense. *Miller v. Rykoff–Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988). In this sense, the standard for futility of amendment is "identical" to the standard applied in a Rule 12(b)(6) challenge. *Id.* (citing 3 J. Moore, Moore's Federal Practice ¶ 15.08[4] (2d ed.1974)).

The denial of leave to amend after a responsive pleading has been filed is reviewed for abuse of discretion. *See id.*

## DISCUSSION

### 1. Motion to Dismiss of United States

The United States contends that Plaintiffs' first and second claims for relief, brought under 26 U.S.C. section 7432 and 7433, respectively, should be dismissed as to Deborah because she is not the relevant "taxpayer" within the meaning of the statutory definition, and the court therefore lacks subject matter jurisdiction over these claims. (*See* Mot. to Dismiss at 4:11–17.) In addition, the United States asserts that Plaintiffs' third and fourth claims for relief, brought under the Federal Tort Claims Act, are also properly dismissed, since they constitute claims "arising in respect of the assessment or collection of any tax," and are therefore excluded from the scope of the Act's waiver of sovereign immunity. (*See id.* at 4:18–21.) The United States also asserts that Plaintiffs' sixth claim for relief is also properly dismissed, since it fails to allege improper disclosure of plaintiffs' taxpayer information (as opposed to taxpayer information of third parties); fails to allege that any information disclosed was "confidential"; and is premised on underlying wrongful tax collection activity which is legally cognizable only under 26 U.S.C. section 7433. (*See id.* at 4:22–26; 10:10–14:13.) Finally, the United States contends that Plaintiffs' ninth claim for relief under the Freedom of Information Act, 5 U.S.C. section 552, is barred due to Plaintiffs' failure to exhaust their administrative remedies, a prerequisite to bringing suit. (*See id.* at 5:1–3.)

### A. First Claim for Relief under 26 U.S.C. Section 7432

The United States first asserts that Deborah's claim for relief under 26 U.S.C. section 7432 is barred because she is not the relevant "taxpayer" within the meaning of that section. Section 7432(a) provides:

> If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7432(a). The United States contends that, since Deborah was not the "direct taxpayer" against whom the liens in this case were issued, the court lacks subject matter jurisdiction over her claims under this statute. (See Mot. to Dismiss at 6:21–7:3.) According to the United States, Deborah's connection with the liens in question is limited to her status as the wife of Raffi, from whom the government did seek to collect.[5] The United States contends that only Deborah's "non-liable community property and joint property interests" were affected by the liens, and that "the underlying tax liens did not attach to any property interests of Deborah Garabedian, since the IRS has never claimed that she is in any way liable for the unpaid taxes of the Soghomonian Farms partnership." (Id. at 7:1–3.) It relies on lower court cases from other jurisdictions, (see id. at 6:10–16), and on two cases which are binding precedent here: Allied/Royal and Ferrel v. Brown, 847 F.Supp. 1524, 1528 (W.D.Wash.1993) aff'd, 40 F.3d 1049, 1049–50 (9th Cir.1994) (adopting opinion of district court in Ferrel ("[w]e affirm for the reasons fully explicated in the district court's excellent published opinion. . . . We adopt that opinion as our own.")).

Plaintiffs oppose the United States' motion, primarily on the ground that there is "recent case law which discourages the narrow interpretation formerly used." (Opp. to Mot. to Dismiss at 11:8–13 (citing United States v. Williams, 514 U.S. 527, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995)).) They contend that the real issue is not whether Deborah "was a 'direct taxpayer,' as argued by the United States; but rather, whether she, or her property interests were 'subject to' efforts to collect a tax. If so, she has a stake in the outcome of this action." (Id. at 13:13–18.)

Plaintiffs' contention is unpersuasive, for several reasons. First, the Williams case does not, as Plaintiffs contend, control in this case. Williams concerned interpretation of a different statute than the one at issue here: 28 U.S.C. section 1346(a)(1), which establishes district court jurisdiction in "[a]ny civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected . . . ." 514 U.S. at 531–32, 115 S.Ct. 1611 (emphasis added). This provision is not limited to a "taxpayer" (as is section 7432(a)), or to the "direct taxpayer" (as does almost every case to interpret section 7432(a)). In addition, the plaintiff in Williams had actually paid by the wrongfully assessed tax, in spite of the fact that the underlying tax debt wasn't hers but her former husband's, and was suing for the refund. The Supreme Court relied on this point in concluding that to deny her recovery in this case "would leave people in Williams' position without a remedy." 514 U.S. at 536, 115 S.Ct. 1611. Here, no such payment is alleged to have occurred. Not only did the IRS never collect an illegal tax from Deborah, it is not alleged to have even tried.

Second, Williams is not, as Plaintiffs suggest, the latest word on who may be a plaintiff-"taxpayer" under the taxpayer

---

**5.** The United States does not challenge at this time Raffi's claim for the allegedly wrongful collection attempts. Its current motion to dismiss as to the first claim for relief is limited to Deborah.

suit provisions of the United States Code. Several of the cases the United States now relies on in support of its motion were cited with approval in *Allied/Royal,* including *Ferrel* and *Progressive Bank & Trust Co. v. Moore,* 91–1 USTC ¶ 50,192, 1991 WL 55790 (E.D.La.1991). *See Allied/Royal,* 166 F.3d at 1003. *Ferrel,* in turn, also relied on and cited with approval cases the United States now relies upon. *See Ferrel,* 847 F.Supp. At 1528, and cases cited therein. *Allied/Royal* was decided by the Ninth Circuit in 1999; *Williams* was decided by the Supreme Court in 1995. The Ninth Circuit could not have been unaware of Supreme Court precedent in deciding *Allied/Royal,* and in approving of the cases cited therein. Therefore, *Williams* does not constitute "recent case law which discourages the narrow interpretation formerly used." (Opp. to Mot. to Dismiss at 11:8–13.) To the contrary, *Allied/Royal* is the more "recent case law," and it is binding on this court in the present case.

■ The court finds persuasive the argument of the United States that because Deborah was not the "direct taxpayer," she does not have standing to sue. The cases that have considered the question so far reach this result, and these cases have been endorsed by the Ninth Circuit. *See, e.g., Progressive,* 1991 WL 55790 at *7 (section 7732 is available "only to those taxpayers against whom the I.R.S. is attempting to collect"; an "innocent person" whose property is seized to satisfy the tax liability of another is limited to an action for wrongful levy under section 7426),[6] cited with approval in *Ferrel,* 847 F.Supp. at 1528; *see also Lee v. United States,* 93–2 USTC ¶ 50,490, 1993 WL 393054 at *2 (N.D.Ga.1993) (where liens and levies were allegedly issued against property of wife to satisfy husband's tax debt, wife could not state a claim under section 7432), cited with approval in *Ferrel,* 847 F.Supp. at 1528. Plaintiffs do cite one case which, in reliance on *Williams,* reaches the opposite result: *Southland Forming, Inc. v. United*

*States,* 98–1 USTC ¶ 50,155, 1997 WL 842410 at * 5 (S.D.Fla.1997). However, this case is directly contra to the ones cited with approval by the Ninth Circuit in *Ferrel,* and whose approval was reaffirmed by the citation with approval to *Ferrel* in *Allied/Royal. See* 166 F.3d at 1003.

It is the established rule that waivers of sovereign immunity are construed narrowly and in favor of the sovereign. For these reasons, the motion of the United States to dismiss Deborah's first claim for relief will be granted.

**B. Second Claim for Relief under 26 U.S.C. Section 7433**

The United States next contends that Deborah's second claim for relief under section 7433 should also be dismissed, for the same reason that her claim under section 7432 should be. This argument is even more persuasive than those offered in support of its section 7432 arguments. In both *Allied/Royal* and *Ferrel,* the court explicitly approved of dismissal of section 7433 claims in situations factually and legally indistinguishable from this case. Thus, Plaintiffs' argument is precluded by both cases.

Section 7433 provides that

[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title … such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433.

The Ninth Circuit interprets the phrase "such taxpayer" as used in section 7433 as meaning that it is only the "taxpayer from whom the IRS collected the tax" who may maintain a suit under this section. *Ferrel,* 847 F.Supp. at 1528, *aff'd,* 40 F.3d 1049,

---

**6.** Here, none of the subject properties were actually levied upon, and so a wrongful levy claim under section 7426 would have been

unavailable to both plaintiffs. Plaintiffs concede as much. (*See* Opp. at 6:6–10.)

1049–50. Thus, standing to sue under section 7433 does not depend on being "a taxpayer"; it requires that the plaintiff be the "direct taxpayer," and not a third party. *Id.* Plaintiffs' contentions that Deborah was "**subjected to** nine years of unwarranted collection activity," (Opp. at 13:24–25) (emphasis original), and that she "had an interest in the property on which the IRS liens caused an encumbrance," (*id.* at 15:15–16), are legally irrelevant, since Plaintiffs state that neither of them "ever owed the tax," and they do not allege that· the IRS ever attempted to collect from Deborah.[7] (*Id.* at 13:23; Compl. at 4:10–13 (IRS "embarked on a series of *collection activities ... against Raffi* Soghomonian").)

▮ Deborah does not fall within the definition of "direct taxpayer" as required by Ninth Circuit caselaw, and the second claim for relief under section 7433 will be dismissed as to her.

### C. *Third and Fourth Claims for Relief under the Federal Tort Claims Act*

Plaintiffs' third and fourth claims for relief are for general negligence and negligent infliction of emotional distress, respectively. Both claims state that they are brought under 28 U.S.C. sections 2679 and 1346. These provisions are part of the statutory scheme known as the Federal Tort Claims Act ("FTCA"). *See, e.g., Wilkerson v. United States,* 839 F.Supp. 440, 446 (E.D.Texas, 1993).

Section 1346 establishes district court jurisdiction over certain suits against the United States in actions based on "the negligent or wrongful act or omission of any [government] employee ... acting within the scope of ... employment" where a private person would also be liable. 28 U.S.C. § 1346(b).[8] However, this general grant of jurisdiction is "[s]ubject to the provisions of chapter 171 of this title," including section 2679, which is cited by Plaintiffs.

▮ The United States contends that Plaintiffs' third and fourth claims are barred by a statutory exception to the FTCA found in 28 U.S.C. section 2680(c). (*See* Mot. to Dismiss at 9:8–17.) Under section 2680, the provisions of the FTCA do not apply to "[a]ny claim arising in respect of the assessment or collection of any tax ...." 28 U.S.C. § 2680(c). This provision has been broadly interpreted to bar claims based on "any activities of an IRS agent even remotely related to his or her official duties." *Capozzoli v. Tracey,* 663 F.2d 654, 658 (5th Cir.1981); *see also Morris v. United States,* 521 F.2d 872, 874 (9th Cir.1975). Moreover, where applicable, this provision is an "absolute bar" to jurisdiction. *Cleveland v. Williams,* 874 F.Supp. 270, 272 (E.D.Cal.1994). Given this broad language, and the rule that waivers of sovereign immunity (such as the Tort Claims Act scheme in general) are to be construed narrowly and in favor of the

7. Plaintiffs appear to assert that Deborah was (or would have been) liable for Raffi's tax debt on community property theories, perhaps believing that if she was liable then she would qualify as the "direct taxpayer" under *Ferrel.* The United States maintains that her connection with collection efforts was limited to her "non-liable community property and joint property interest" in the property that was subject to the liens. Thus, there is a dispute about whether Deborah's property interests could have been liable for the tax in question. However, this dispute is immaterial, since the language in the cases denying "third party" recovery under sections states that standing under sections 7732 and 7732 is limited to the taxpayer whose tax debt the IRS was *attempting* to collect, not from whom

it *might have been able* to collect. Even if the IRS could have collected the improper tax debt from Deborah, this is insufficient to confer jurisdiction over her section 7432 and 7433 claims.

8. Since Plaintiffs' third and fourth causes of action are for negligence, they must have been brought under section 1346(b) (which provides for jurisdiction over negligence claims) rather than 1346(a) (which provides for jurisdiction over actions for "recovery of any internal-revenue tax ... erroneously or illegally assessed or collected...."). Plaintiffs never actually paid the allegedly improper tax, and they therefore would have no action for "recovery" under section 1346(a).

sovereign, the United States appears correct in its contention that the conduct alleged by Plaintiffs—filing of liens and the failure or refusal to non-attach these liens once discovered to be in error—amounts to conduct "in respect of the assessment or collection of [a] tax." (Mot. to Dismiss at 10:5–9 (quoting 28 U.S.C. § 2680(c)).) Recovery for these acts is therefore barred.

Plaintiffs contend that the acts they complain of were "carried out by governmental officials in their capacity as agents or employees for the Internal Revenue Service and the United States; but perpetrated outside the realm of their duties regarding the assessment or collection of a tax." (Compl. at 60:8–16.) They rely on *Wilkerson v. United States*, 839 F.Supp. 440, 446 (E.D.Tex.1993) for the proposition that some of the acts alleged may be "outside the scope of 'assessment or collection'" and therefore "not protected from the qualified immunity" found in section 2680(c). (Opp. at 27:12–16.) In particular, they contend that the IRS failed to adequately investigate the actions of the third party who allegedly committed the forgeries and impersonations that resulted in the liens' being issued in the first place. (*See id.* at 28:1–9.) While Plaintiff's position is not completely without merit, the United States has the more persuasive argument here.

■ The assertion that the IRS failed to adequately investigate the allegedly fraudulent implication of Raffi in the partnership debt appears to be merely another way of saying that the liens shouldn't have attached to Plaintiffs' property in the first place. (*See* Reply at 7 & n. 3.) Phrased differently, this is nothing more than an allegation of improper tax assessment or collection (or attempted tax collection), which is barred by section 2680(c).

Moreover, Plaintiffs' argument is foreclosed by the Ninth Circuit's holding in *Morris. See* 521 F.2d at 874. There, the court held that even where IRS agents told the putative tax debtor's creditors about the tax debt and stated that the debtor "would be insolvent as a result";

the debtor's credit as a result "dried up" and he was consequently forced out of business; the IRS in its collection attempts "harassed and intimidated [plaintiff] and his wife and on several occasions unlawfully seized and levied upon property belonging to them"; and the underlying tax debt was subsequently determined to be invalid, nevertheless section 2680(c) barred plaintiff's claim. *Id.* "Even assuming arguendo that the ... agents' collection activity was beyond the normal scope of authority and amounted to tortious conduct, ... the claim falls squarely within the exempted group of tort claims arising out of tax collection efforts." *Id.* Here, Plaintiffs' allegations do not even go as far as the facts in *Morris*—for example, there was no actual levy or seizure of property—and *Morris*' dismissal for lack of subject matter jurisdiction compels the same result in this case.

Finally, as already stated, grants of sovereign immunity are construed narrowly, and it therefore follows that exceptions to grants of immunity must be construed generously. The statutory exclusion here is a broad one: it applies to the "assessment or collection of *any* tax," and not just Plaintiffs'. 28 U.S.C. § 2680(c) (emphasis added). The tax of the farm partnership, which is what the IRS was ultimately trying to recover, falls within this definition.

For these reasons, the motion of the United States will be granted as to Plaintiffs' third and fourth claims for relief.

### D. Sixth Claim for Relief for Unauthorized Disclosures

The United States next contends that Plaintiffs' sixth claim for relief is properly dismissed as to both Deborah and Raffi, on three grounds: (1) that the information allegedly disclosed concerns a third party (the Soghomonian Farms partnership) and not Plaintiffs; (2) that no confidential information was disclosed; and (3) that the wrongful disclosure claim is actually based on wrongful collection practices, which must be addressed (if at all) through a

claim under section 7433. (See Mot. to Dismiss at 10:10–12.)

Plaintiffs concede that "the disclosure claims, as they happened here, do not pertain to [Deborah], except to the extent that certain credit reports have, at times, listed her as a party responsible for tax liens: an error that appears outside the scope of the IRS' liability on this particular issue." (Opp. at 32:18–25.) Therefore, the only question that must be decided at this time is whether Raffi's claims for unauthorized disclosure should also be dismissed.

26 U.S.C. section 7431 provides for a civil damages action against the United States if an officer or employee intentionally or negligently "inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103." 26 U.S.C. § 7431(a)(1). "Return information" is defined in section 6103(b) as "a taxpayer's identity, ... tax liability, ... deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or amount thereof) of any person ... for any tax, penalty ... forfeiture ... or offense ...." 26 U.S.C. § 6103(b)(2)(A). Plaintiffs have not alleged or contended that Raffi's tax return was disclosed. The only issue is whether anything that qualifies as "return information" was revealed without their authorization.

■ The court finds persuasive the United States' contention that Plaintiffs have not alleged disclosure of any "information with respect to" Raffi, as opposed to the real debtor, the partnership. 26 U.S.C. § 6103(b)(2)(A). Although it is true that Plaintiffs have alleged (albeit on information and belief) that the IRS made an unauthorized tax information disclosure to an agent of Fidelity prior to the time they provided Fidelity with a signed disclosure

authorization, it also appears that the only information disclosed concerned the tax liability of the partnership. There is authority for the proposition that the "mistaken inclusion of another's tax liability in a Notice of Levy," without more, is insufficient to allow plaintiff to recover on an unauthorized disclosure theory. *See, e.g., Brown v. United States,* 755 F.Supp. 285, 286–87 (N.D.Cal.1990).

■ Moreover, the United States' second argument for dismissing Plaintiffs' sixth claim for relief—that the information that Plaintiffs allege was disclosed was not "confidential," since it already was included in public files maintained by the Fresno County Recorders' Office—is well-taken. (*See* Mot. to Dismiss at 13:4–12 .) Under *William E. Schrambling Accountancy Corp. v. United States,* 937 F.2d 1485, 1488 (9th Cir.1991), a "prerequisite to liability under Section 7431 ... is the confidentiality of the disclosed information." *See also id.* at 1489 ("We find, therefore, that the information placed in file at the Recorder's Office is 'no longer confidential and may be disclosed again without regard to section 6103.' ") (citation omitted). Here, so far as the allegations in the record disclose, every conceivable item of taxpayer information allegedly disclosed to Fidelity or Trans Union was already contained in the series of tax lien documents—either the Notices of Federal Tax Liens which were filed with the Fresno County Recorders' Office, (*see* Compl.Exs. A–E), or the Notices of Non–Attachment, which are the subject of Plaintiffs' request for judicial notice. The Complaint alleges, in conclusory terms, that Frank Guido disclosed "detailed background information" about Raffi to Trans Union. (Compl. at 49:3–24.) However, Plaintiffs do not state what information was allegedly revealed. In their Opposition, they again state that unauthorized disclosures occurred; again, however, they fail to provide any details. The only reference to specific disclosures to Trans Union is in Exhibit K to the complaint—a letter from Trans Union to Deborah which states that based on Trans

Union's conversation with Guido, the disputed tax lien had been removed from the credit record. (*See* Opp. at 34:1–35:20; Compl.Ex. K.) This letter is dated July 16, 1999. The only information which this document suggests was disclosed is that Raffi was *not* liable for the disputed tax liens; yet this same information probably was publicly available as early as June, 1997 due to the Notice of Non–Attachment of the same date, of which Plaintiffs have requested the court take judicial notice.

Plaintiffs come close to conceding that the confidentiality requirement, if applied here, would bar their claims. "In arguing that confidentiality is an essential element, the United States wants this court to follow a line of 9th Circuit cases which have apparently created a judicial exception to the strict prohibition against *any disclosures* as provided by [the statute] (emphasis original). Plaintiff ... asserts that these 9th Circuit cases have been decided in error given the clear language and intent of Congress." (Opp. at 40:5–13.) Plaintiffs contend that *Schrambling* "erroneously" extended prior case law, and that their case is factually distinguishable. (*Id.* at 40:12–13; 41:19–20.) However, they do not say how their case is different, or offer any plausible reason why the court should not follow the allegedly erroneous rule announced in *Schrambling*.

Finally, the United States appears correct in its contention that where the disclosure complained of is premised on collection activity the exclusive remedy lies in sections 7432 and 7433. *See, e.g.,* 26 U.S.C. § 7433(a) ("Except as provided in section 7432, [a section 7433] civil action shall be the exclusive remedy for recovering damages resulting from such actions [for unauthorized collection]."); *see also Elias v. United States*, 91–1 USTC ¶ 50,-040, 1990 WL 264722 at *7 (C.D.Cal.1990) ("Section 7431 is not intended to interfere with the collection actions to be taken by revenue officers in performing their tasks to collect delinquent taxes, albeit under the mistaken impression the taxes at issue were not paid"). A fair reading of all of Plaintiffs' papers (including the absence of allegations regarding the specific taxpayer information allegedly disclosed, the timing of such alleged disclosures, and the dates on which disclosure authorization forms were signed) suggests that Plaintiffs are really complaining of nothing more than the actions of the IRS and its agents in attempting to collect an admittedly invalid tax debt.

Under the rule according a narrow construction to waivers of statutory immunity, the United States has not agreed to be sued for wrongful disclosure on the facts as alleged. For these reasons, Plaintiffs' sixth claim for relief will be dismissed.[9]

### E. Ninth Claim for Relief for Freedom of Information Act Violations

The United States next asserts that dismissal for lack of subject matter jurisdic-

---

**9.** The caption to Plaintiffs' sixth claim for relief also cites 5 U.S.C. section 552(a). In the context of unauthorized disclosures of taxpayer information, this citation is mysterious. Section 552(a) required disclosure—not nondisclosure—of certain items of public agency information upon request. Moreover, section 552(a) is a part of the Freedom of Information Act, a violation of which does not afford a remedy of money damages. *See Gasparutti v. United States*, 22 F.Supp.2d 1114 (C.D.Cal. 1998).

In response to this argument, Plaintiffs contend that the right to damages is provided in section 552(a)(g)(1)(4). This is incorrect, and no such provision exists. Subsection (g)(1) of 5 U.S.C. section 552a—and *not* 552(a)—provides for a private claim against an administrative agency for failure to review or correct public records concerning individuals. Subsection (g)(4) of section 552a provides for damages in a subsection (g) suit where the agency acts in an intentional or willful manner; however, this provision by its terms only applies to suits brought under section 552a(g), and not 552(a). The Complaint here alleges only a 552(a) claim, and not a 552a(g) claim.

Because Defendants' motions are granted without prejudice to filing an amended complaint, Plaintiffs may, if they chose to do so, assert a claim under section 552a(g). The court expresses no view on the validity of such a claim, should Plaintiffs chose to assert it.

tion of Plaintiffs' ninth claim for relief for violation of the Freedom of Information Act ("FOIA") is proper, since Plaintiffs failed to exhaust their administrative remedies prior to the bringing of this case. (*See* Mot. to Dismiss at 14:1420; 15:13–16:7.) Under the FOIA, an agency is required to "make a determination with respect to any appeal within twenty days (excepting Saturday, Sundays, and legal public holidays) after the receipt of [the] appeal." 5 U.S.C. § 552(a)(6)(A)(ii). The waiting time provisions of the FOIA "requir[e] the completion of the administrative appeal process before courts become involved, if the agency has responded to the request before suit is filed." *Oglesby v. Department of the Army,* 920 F.2d 57, 65 (D.C.Cir.1990).

Plaintiffs appear to concede that they did not wait the required twenty-day period. They state that they "waited until after they thought the twenty days had expired, counting from the date of the mailing," and that they have since received their appeal determination (but are dissatisfied with it). They request the opportunity to amend or supplement their pleadings or, alternatively, that the court preserve their right to re-file. The United States says that it has no objection to allowing Plaintiffs leave to reassert this claim in an amended complaint. (*See* Reply at 11:25–12:1.) Therefore, Plaintiffs' ninth claim for relief will be dismissed, without prejudice to its being reasserted in a Second Amended Complaint.

## II. Motion to Dismiss of Trans Union

Trans Union requests dismissal of Plaintiffs' seventh claim for relief for wrongful "solicitation" of unauthorized disclosures of taxpayer information under Rule 12(b)(6), on the ground that no such cause of action exists; that Plaintiffs do not allege that Trans Union disclosed tax return information; that since they are not the relevant "taxpayers," Plaintiffs cannot assert such a claim; and that any information disclosed was not confidential and the disclosure therefore is not actionable. (*See* Mot. to Dismiss at 3:25–4:2.) By this motion,

Trans Union does not challenge Plaintiffs' eighth claim for relief for violation of the credit reporting laws.

In response to Trans Union's motion, Plaintiffs recite a litany of allegations from their Complaint regarding their credit reporting law violation allegations. (*See* Opp. at 2:19–6:2.) They offer no authority, however, for the proposition that a private entity may be held liable for the solicitation of a government agency's unauthorized taxpayer information disclosure. Instead, they appear to concede that no such claim may be stated. "As far as Plaintiffs can tell, Trans Union primarily asserts that there is no cause of action for 'solicitation' of tax return/tax payer information. [¶] Assuming Trans Union is correct, Plaintiffs would state 'so what?' " (*Id.* at 8:4–9.) They admit that "in hindsight, Plaintiffs should have switched around the labels or added labels." However, they contend, because they "could have listed labels for misrepresentation, for unfair business practices, for intentional infliction of emotional distress, and so forth," in reality, "the labels don't matter." (*Id.* at 9:1–6.) They admit that they "do not specifically know if 26 U.S.C. 7431 prohibits the conduct complained of," but insist that they are only required to plead that Trans Union's activity was "wrongful." (*Id.* at 9:11–12; 12:11–16.)

Plaintiffs' assertions lack merit. While Rule 8 only requires a "short and plain statement of the claim," *see* Fed.R.Civ.P. 8(a)(2), Plaintiffs must give "fair notice" of the claim asserted and the legal grounds upon which it rests. "Notice to the defendant of the mere existence of a grievance is not enough, and ... plaintiff must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery." *Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 466 (9th Cir.1990).

■ It is true, as Trans Union states, that the unauthorized disclosure statute provides for recovery only where a govern-

ment employee makes the disclosure. For this reason, Plaintiffs' "solicitation" theory cannot support recovery. Moreover, aside from their eighth claim for relief for violation of the credit reporting laws, in the Complaint Plaintiffs do not give any indication that they wish to proceed on any other legal theory against Trans Union. Thus, they have not given either Trans Union or the court a "fair idea of the basis of the complaint and the legal grounds claimed for recovery." *Id.* For this reason, dismissal of their seventh claim for relief will be granted.

### III. Motion to Dismiss of Fidelity

Fidelity moves to dismiss the single claim for relief asserted by Plaintiffs against it, the fifth. Fidelity contends that there can be no liability for negligence since it owed Plaintiffs no duty in connection with the issuance of title insurance; it breached no duty owing to Plaintiffs; and there is no causal nexus between Fidelity's acts as alleged and the harm Plaintiffs suffered because of being unable to refinance. (*See* Mot. to Dismiss at 2:10–14.)

Fidelity relies primarily on *Quelimane Co., Inc. v. Stewart Title Guaranty Co.,* 19 Cal.4th 26, 77 Cal.Rptr.2d 709, 960 P.2d 513 (1998). There the California supreme court rejected, as a matter of state negligence law, the notion that a title company owes any duty to a prospective insured with respect to the issuance of title insurance, "including reporting the legal status of the Title thereof." *Id.* at 57, 77 Cal. Rptr.2d 709, 960 P.2d 513. The "threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another...." *Id.* (citation and quotations omitted). Absent such a duty, no liability for negligence may be imposed. *See id.* Ruling that no duty exists, as a matter of law, in the title insurance context, the court stated:

> [W]e decline to recognize a duty to avoid business decisions that may affect the financial interests of third parties, or to use due care in deciding whether to enter into contractual relations with one another.... While title insurers may not discriminate among purchasers on the basis of the purchasers' race, ethnicity, religion, gender or other personal characteristics, they may opt to limit their potential liability by declining certain risks without violating any statutory or common law obligation.

*Id.* at 58–59, 77 Cal.Rptr.2d 709, 960 P.2d 513.

■ Plaintiffs appear to concede that *Quelimane* precludes any claim of negligence concerning the issuance of title insurance, but argue that the source of their damages is "the emotional and economic effects of incorrectly being told they owed more than $181,000.00 in unpaid taxes ... after Fidelity purported to arrange and represent to Plaintiffs, Fidelity's willingness to contact the IRS and determine the true state of the facts." (Opp. at 7:16–21.) Thus, they contend that by its actions Fidelity *assumed* a duty, and their negligence theory is one of "negligent undertaking." (*Id.* at 8:12–23; 10:1.) In the alternative, they contend that Fidelity acted as an escrow agent in connection with the refinancing transaction, and breached duties in that capacity.[10] (*See id.* at 10:6–20.)

Fidelity's motion will be granted. To be sufficient, a complaint must give the defendant fair notice of what claims are asserted and the legal grounds on which they rest. The court need not consider facts which are alleged for the first time in opposition to a motion to dismiss under Rule 12(b)(6). *See Schneider v. California Dept. of Corrections,* 151 F.3d 1194, 1197 n. 1 (9th Cir.1998). The Complaint here cannot be fairly read to have put Fidelity on notice either of Plaintiffs' "negligent undertaking" theory, or their "escrow agent" allegations. Fidelity cannot be expected to re-

---

10. Plaintiffs also assert that they wish to recover against Fidelity on an "unauthorized disclosure" theory under section 7431. (*See* *id.* at 3:20–23.) However, this avenue of recovery is foreclosed by the fact that no such cause of action exists against a private actor.

spond for the first time in its reply papers to these assertion.

### IV. Leave to Amend

Under Rule 15(a), leave to amend "shall be freely given freely when justice so requires." Fed.R.Civ.P. 15(a). However, it is not error for the court to deny leave to amend where the amendment would be futile, or where the amended complaint would still be subject to dismissal. *See Saul v. United States*, 928 F.2d 829, 843 (9th Cir .1991).

The court cannot say with complete confidence that amendment in this case would necessarily be futile, or that plaintiff can prove "no set of facts" pursuant to the amended pleading which would constitute a valid claim. *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir.1988). Therefore, Plaintiffs will be allowed to file a Second Amended Complaint if they choose to do so. However, Plaintiffs are cautioned that if a renewed motion to dismiss for lack of subject matter jurisdiction is filed, the court would have the option to treat it as a "speaking" Rule 12(b)(1) motion, and resolve any and all disputed factual issues at that time. *See Thornhill Pub. Co. v. General Tel. & Electronics*, 594 F.2d at 733. Having given Plaintiffs leave to amend, the court would resolve any disputed facts with confidence that Plaintiffs have been given ample opportunity to assert all relevant allegations.

Likewise, with respect to the motions to dismiss of Fidelity and Trans Union, leave to amend will be granted.

### CONCLUSION

The motions to dismiss of all defendants will be granted; however, dismissal is without prejudice to Plaintiffs' filing a Second Amended Complaint. If Plaintiffs file a Second Amended Complaint, the Second Amended Complaint will supercede any earlier papers filed in this case. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir.1967). Plaintiffs must include any and all allegations and claims they wish to assert in the Second Amended Complaint, as the court

will not consider or refer to prior submissions. Any claim or allegation included in the original or First Amended Complaint but not the Second Amended Complaint will be deemed waived.

The following page limitations shall apply to all papers filed in this case in the future.

All pleadings, as defined in Rule 7 of the Federal Rules of Civil Procedure, shall be not more than fifty pages in length (not including attachments, if any). A party who is unable to comply with this page limitation may request leave to file a longer pleading, but must do so by motion at least one week before filing. Leave will be granted upon a showing of good cause.

All memoranda and briefs filed in support of or opposition to a motion shall be not more than twenty-five pages for any opening brief or memoranda (including oppositions), and not more than ten pages for any reply. Leave to exceed these limits will be granted upon the same showing and according to the same procedure as set forth in the preceding paragraph.

Counsel are reminded of their obligations under Rule 11 of the Federal Rules of Civil Procedure.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS HEREBY ORDERED that:

A. The motion of the United States to dismiss the first and second claims for relief as to plaintiff Deborah Garabedian is GRANTED;

B. The motion of the United States to dismiss in whole the third, fourth, sixth, and ninth claims for relief is GRANTED;

C. The motion of Trans Union to dismiss the seventh claim for relief is GRANTED;

D. The motion of Fidelity to dismiss the fifth claim for relief is GRANTED; and

E. Plaintiffs shall have leave to file a Second Amended Complaint; however, if they do so, they must file and serve their Second Amended Complaint by January 18, 2000.

All future filings in this case must comply with the page limitations set forth above.